In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00147-CR


______________________________




WILLLIE RAY LOVE, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 276th Judicial District Court


Titus County, Texas


Trial Court No. F13,551




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley


Concurring Opinion by Justice Carter


O P I N I O N



 After having been convicted by a jury of possession of more than fifty pounds and less than
2,000 pounds of marihuana, a second-degree felony, and having been assessed a penalty of fifteen
years' confinement and a fine of $10,000.00 by that jury, Willie Ray Love, Jr., files his appeal.

 Love's appeal is limited to one alleged point of error: he maintains that the trial court erred
in its refusal to suppress the evidence obtained after a search of his automobile, claiming that the
evidence found was the product of an unreasonable search and seizure. We find that the trial court
did not err, ratify its determination, and affirm the judgment.

 The facts surrounding and leading up to the complained-of search are uncontroverted. Love
was proceeding north on U.S. Highway 59 in Marion County on October 5, 2004, when he was
pulled over by State Trooper Michael Horn for traveling 76 miles per hour in a 65-mile-per-hour
zone. The time of the traffic stop was about 9:35 p.m. When Love was alerted to stop, he pulled
into the center turn or dividing lane, but Horn directed him with his patrol car's public address
speaker to move to the right-hand shoulder of the road; Love promptly complied.

 After the traffic stop, Love provided his driver's license to Horn. Horn, noticing that there
was a substantial amount of luggage and a large plastic storage box in plain view, questioned Love
about his travel plans. Love, acting nervously by spitting often and by failing to make eye contact
with Horn, indicated that he had commenced his travel at Houston. At first, he said that Shreveport,
Louisiana, was his destination and then changed to say that he was on his way to Monroe, Louisiana,
by way of Shreveport, Louisiana. During this questioning period, Love indicated that it was his aim
to travel to see his cousin, but he had only a telephone number of the cousin and no address for him. 
Love told Horn that the duration of his stay was to be about two days. Upon further questioning,
Love said that he had previously had only a previous minor drug conviction. The automobile driven
by Love was a rental car.

 The questioning during the traffic stop aroused suspicions with Horn because: (1) if a person
were traveling north from Houston to Shreveport, Louisiana, he would have driven past two well-marked major highway turnoffs which would have carried him easterly toward that destination, but
he was no longer traveling toward his stated geographic goal; (2) the volume of luggage was far
greater than one would ordinarily expect a person to carry for a short two-day stay; (3) a criminal
background check revealed that Love had two felony drug convictions, not the single minor one to
which he had admitted; (4) Love's nervous demeanor exceeded the normal scope of nervousness he
would be expected to display; (5) Highway 59 is a major drug artery; (6) Love was driving a rental
car, this being a characteristic means of transportation for those transporting drugs; and (7) Love was
inconsistent, vague, and uncertain about his destination and was not traveling the route which would
carry him to the place he indicated he was attempting to go. 

 After these suspicions were aroused, Horn requested permission of Love to search the vehicle
and was denied permission to search; this denial took place some twenty-five minutes after the initial
traffic stop. Horn then attempted to locate a dog trained in narcotics detection to conduct a "free air"
search of the exterior of the automobile driven by Love. There was not then such a dog in Marion
County and the Department of Public Safety (DPS) drug dog in Texarkana was engaged elsewhere. 
Horn located such a drug dog which worked with the sheriff's office of neighboring Harrison County
and requested its services. When the dog arrived, about forty-five minutes after the initial traffic
stop, it alerted to the presence of drugs on both front doors of the automobile driven by Love. Using
the dog's alert as probable cause, a search of the automobile was conducted, resulting in the
discovery and seizure of some 93.44 pounds of marihuana. 

 Love maintains that the intervention of forty-five minutes from the initial traffic stop to the
time of the free-air search by the narcotics dog was too long and that the detention was unwarranted.
Therefore, he maintains, the search was not reasonable.

 Love's motion to suppress the results of the search was the subject of a hearing pursuant to
Article 28.01 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 28.01
(Vernon 2006). Love's motion to suppress was denied. 

 We review the trial court's decision on a motion to suppress evidence by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts that
depend on credibility, but review de novo the trial court's application of the law. Wiede v. State, 214
S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of
law that finds support in the record." Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App.
2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review
de novo determinations of probable cause after granting deference to the trial court's determination
of historical facts. Guzman, 955 S.W.2d at 87. 

 The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const.
amend. IV. It is well settled in Fourth Amendment jurisprudence that absent a warrant or some
functional equivalent giving probable cause to arrest, only a limited, investigatory detention of an
individual is permitted. Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). An
investigative detention during the course of a traffic stop in which the subject is not free to leave is
a seizure for purposes of the Fourth Amendment, and the appellate court must analyze the stop under
the reasonableness standard. Whren v. United States, 517 U.S. 806, 810 (1996).

 Under Terry v. Ohio, 392 U.S. 1, 19-20 (1968), the determination of whether an investigative
detention is reasonable is a two-pronged inquiry: whether the officer's action was justified at its
inception and whether it was reasonably related in scope to the circumstances which justified the
interference in the first place. This determination is a factual one and is made and reviewed by
considering the totality of the circumstances existing throughout the detention. Loesch v. State, 958
S.W.2d 830, 832 (Tex. Crim. App. 1997).

 Certainly, the length of a detention may render a traffic stop unreasonable and there is not
an absolute and unbending time line which prescribes when this has become unreasonable. United
States v. Sharpe, 470 U.S. 675, 679 (1985). In lieu of such an unbending rule or bright line, common
sense and ordinary human experience must govern over rigid criteria. Id. at 685. The reasonableness
of the duration of a detention depends on whether the police diligently pursued a means of
investigation that was likely to confirm or dispel their suspicions expeditiously, during which time
it was necessary to detain the defendant. Id. at 686. In determining the reasonableness of the
duration of a detention, the trial and appellate courts may consider legitimate law enforcement
purposes served by any delay in the officer's investigation. Id. at 685. Fourth Amendment
reasonableness requires a balance between serving the interest of the public as weighed against the
individual's right to be free from arbitrary detentions and intrusions. Kothe v. State, 152 S.W.3d 54,
63 (Tex. Crim. App. 2004).

 In looking at the actions that night, we should first take into account that there are two time
frames involved here: (1) the time between the initial stop of Love and (2) the time necessary to
bring a drug dog onto the scene. Was either of these time frames so unreasonable as to constitute
a violation? 

 One of the factors which enters into the equation of determining reasonableness is the
location of the search and the time of day it was conducted. Breaking the forty-five-minute time
period between the initial stop and the search of the vehicle into two portions is helpful. 

 The first part of the time period was the initial stop, the questioning of Love, the radio
confirmation of the information given by Love to Horn, a second questioning of Love concerning
the inconsistencies which the confirmation raised, and the request to permit a search of Love's car.
This consumed twenty-five minutes and is not an unreasonable period of time. As a result of the
information gleaned during this period of time, Horn had acquired "articulable facts that, when
combined with rational inferences from those facts" led him to have a reasonable belief that Love
was actually engaged in criminal activity. See Castro v. State, 227 S.W.3d 737, 740 (Tex. Crim.
App. 2007).

 The second period, then, would be the time between Love's refusal to permit a search of his
automobile and the commencement of the open-air search by the drug dog, a period which took an
additional twenty minutes. We look at those surrounding circumstances to determine if this time
period was unreasonable. After his suspicions had been aroused and after he had been denied
permission to conduct a search of the automobile, Horn did not delay but, rather, immediately began
an attempt to locate a drug dog to conduct a search of the exterior of Love's vehicle for the presence
of the odor of contraband. Marion County had no drug dog and one would need to be located and
brought from elsewhere. The first attempt was to enlist the aid of the DPS's dog, stationed in
Texarkana. That dog being unavailable, Horn then contacted the nearest law enforcement entity
having such a dog, that being the neighboring sheriff's office in Harrison County. Considering the
distances involved and the fact that it was night time, it is somewhat surprising that only twenty
minutes expired before the dog arrived on the scene. Considering the circumstances, this time frame
suggests that the time between the determination that a further investigation by use of a drug dog and
its actual deployment was done not only in a reasonable time frame, but expeditiously. The propriety
of the stop's duration is judged by assessing whether the police diligently pursued a means of
investigation that was likely to quicky dispel or confirm their suspicions. United States v. Sharpe,
470 U.S. 675, 686 (1985).

 Finding no error, we affirm the judgment.





 Bailey C. Moseley

 Justice




CONCURRING OPINION

 Law enforcement officers may stop and briefly detain persons suspected of criminal activity
on less information than is constitutionally required for probable cause to arrest. Nevertheless, even
a temporary detention of this kind is not permissible unless the circumstances on which the officers
rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon
will be engaged in criminal activity. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)
(citing Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). 

 To justify an investigative detention, an officer must have reasonable suspicion, based on
specific, articulable facts that, in light of the officer's experience and general knowledge, lead the
officer to a reasonable conclusion that criminal activity is underway and that the detained person is
connected with the activity. Perez v. State, 818 S.W.2d 512, 516 (Tex. App.--Houston [1st Dist.]
1991, no pet.).

 The line drawn between reasonable and unreasonable detention has evolved. In Davis, the
Texas Court of Criminal Appeals found that the facts did not support a conclusion that the defendant
was engaged in or about to be engaged in criminal activity even though the evidence showed alleged
inconsistent statements by occupants of the vehicle, the passenger had a drug conviction, the vehicle
was not registered in the driver's name, and the driver did not appear to the officer to be on a
business trip. After the defendant refused to consent, the drug dog was summoned and the vehicle,
but not the driver, was detained. The Texas Court of Criminal Appeals held that the court of appeals
erred in determining that the detention and search were justified. Davis, 947 S.W.2d at 241-42. 

 Very recently, the Texas Court of Criminal Appeals found a twenty-five-minute detention
and ensuing search were reasonable after the defendant refused to consent to a search and a drug dog
was then obtained. The court found facts supporting that detention included two Florida "drug
convoy" cars, diversionary tactics by one of the drivers, overdue rental car, and inconsistent stories. 
Madden v. State, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007). 

 Based on the most recent opinions from the Texas Court of Criminal Appeals, I agree that
the facts here are sufficient to justify a finding that the detention was permissible. 

 The question here is what articulable facts support an officer's reasonable suspicion and
conclusion that Love was involved in or connected to criminal conduct? 

 First, we must remember that this detention occurred after Love specifically invoked his
Fourth Amendment right against an unreasonable search by refusing to consent to the search.

 The majority opinion cites seven reasons why the officer's suspicions were aroused, seeming
to give equal credence to each. I think we should acknowledge that some of these facts lend
considerably less support than others that Love was involved in unusual activity related to crime. 

 1. Highway 59 is a major drug artery. I would dare to say that a comprehensive study of the
appellate opinions in Texas would demonstrate that every interstate or United States highway in
Texas is considered a major drug corridor. I find this fact lends little, if any, credence to a
conclusion that a particular individual who is traveling on a major highway is in possession of drugs. 
It is also true that all persons who possess drugs on a highway are driving or traveling in a vehicle,
but I doubt that anyone would seriously think that merely because one is driving a vehicle he or she
is to be suspected of possessing drugs. Likewise, I do not think that merely driving a vehicle on a
major highway, which is done by thousands of law-abiding people every day, contributes to a
reasonable suspicion that the driver is a drug courier. 

 2. More nervous than normal. Almost every person who sees flashing lights in the rearview
mirror and realizes that a police officer is about to detain him or her becomes somewhat nervous. 
How nervous do you have to be to exceed that normally expected? Some people by nature are more
nervous than others and may begin crying when receiving a speeding ticket. Once again, this appears
to be a fact that has little, if any, relevance to a reasonable conclusion that one is involved in crime
(generally drug possession). In a recent case, the Texas Court of Criminal Appeals labeled this
purported nervousness as "lagniappe--icing-on-the-cake--to the determination of reasonable
suspicion." Madden, 242 S.W.3d at 517. 

 3. and 4. Information about his destination--failure to drive toward Shreveport. The officer
testified that Love told him he was driving to Shreveport, Louisiana, and then later stated he was
going to Monroe. If he intended to drive to Shreveport, he had driven past the interstate highway
leading to Shreveport. This could indicate to a police officer that Love was attempting to deceive
the officer. 

 5. Driving a rental vehicle. The vehicle was properly rented to Love. Apparently, it is
common for those delivering drugs to use a rented vehicle. However, this too, standing alone, would
be a rather weak indicator of criminal conduct. 

 6. Volume of luggage. The officer thought the amount of luggage was excessive for a two-day trip. Again, this is a weak connection to possible criminal activity. Speaking from personal
experience, I find that every weekend trip my wife and I take involves an excessive amount of
luggage. 

 7. Love had two felony drug convictions. When asked by the officer, Love admitted only
to a conviction for a minor drug offense. This fact carries significant weight when we are
considering what a police officer would be reasonably suspicious of based on his or her experience
and general knowledge. While prior felony convictions are not admissible evidence to prove a
defendant is guilty of the present offense, it cannot be denied that, when a police officer encounters
a person in these circumstances who has previously been found guilty twice of a drug offense, it is
not unreasonable for the officer to have a suspicion of drug possession. Additionally, here, Love
attempted to deceive the officer and minimize his prior drug charges. I believe that the facts that
Love (a) was driving a rental vehicle, (b) gave inconsistent information about his destination, and
(c) had failed to take the highway leading him to that destination become more relevant when
juxtaposed with the fact that he had two prior drug-related convictions. When these four facts are
combined, I think it is reasonable for an officer to have a suspicion, based on objective facts, that
Love was involved in criminal activity. I do not believe that the facts that he (1) was traveling on
Highway 59, (2) was nervous, and (3) had several items of luggage add any strength to the basis for
such a reasonable conclusion. 

 I concur with the opinion of the majority in affirming the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: March 11, 2008

Date Decided: April 4, 2008


Publish



0;                  A.       What's his name?
                        Q.       The police?
                        A.       Not the police. It was the other dude, the drug force man. What's his name? 
            I forget his name.

                        Q.       Was it a law enforcement person or a civilian?
                        A.       Yeah.
                        Q.       Law enforcement?
                        A.       Yeah. 
                        Q.       Do you know where they took the shoes from?
                        A.       Yes, out of my mom's house.
                        Q.       You're sure those are yours?
                        A.       Yeah, they're mine. My wife bought them for me. 
            In a related appeal, we found the evidence sufficient to support Rollerson's convictions
associated with the Norrell burglary. See Rollerson v. State, cause number 06-05-00088-CR. The
State argues that the "modus operandi" were the same in all three burglaries, suggesting that, if
Rollerson is guilty of one of the burglaries, he must be guilty of all three. The State points out that
there were (a) three burglaries, (b) during the daytime, (c) in rural areas, (d) when no one was home,
(e) items were stolen from each residence, and (f) a single pillowcase was taken off the bed in each
residence. The State also points out that there was evidence that cotton gloves were worn by the
perpetrator in two of the burglaries. These similarities are too generic to support an inference of
guilt. 
            The State contends that the evidence that Rollerson was in possession of recently stolen
property supports an inference of guilt. In cases where there is independent evidence of a burglary,
the unexplained personal possession of recently stolen property may constitute sufficient evidence
to support a conviction. See Harris v. State, 656 S.W.2d 481, 483 (Tex. Crim. App. 1984); Dixon
v. State, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.). Mere possession of stolen
property does not give rise to a presumption of guilt, but, rather, it will support an inference of guilt
of the offense in which the property was stolen. Hardesty v. State, 656 S.W.2d 73, 76 (Tex. Crim.
App. 1983). To warrant an inference of guilt based solely on the possession of stolen property, it
must be established that the possession was personal, recent, and unexplained. Sutherlin v. State,
682 S.W.2d 546, 549 (Tex. Crim. App. 1984); Grant v. State, 566 S.W.2d 954, 956 (Tex. Crim.
App. [Panel Op.] 1978). The inference of guilt is not conclusive, however, and the sufficiency of
the evidence must still be examined according to applicable evidentiary standards of appellate
review. Hardesty, 656 S.W.2d at 77.
            Also, the possession must involve a distinct and conscious assertion of right to the property
by the defendant. Grant, 566 S.W.2d at 956. If the defendant offers an explanation for his or her 
possession of the stolen property, the record must demonstrate the account is false or unreasonable.
Adams v. State, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation
for possession of recently stolen property is true or reasonable is a question of fact to be resolved by
the trier of fact. Dixon, 43 S.W.3d at 552.
            Rollerson was found with coins stolen from the Norrell burglary in his possession. But,
Rollerson was not found with any property taken during the McCoin burglary. In order to support
an inference of guilt for the McCoin burglary, it needed to be shown that Rollerson was in possession
of property taken from McCoin's residence. Rogers v. State, 929 S.W.2d 103, 108 (Tex.
App.—Beaumont 1996, no pet.). Merely showing that Rollerson was in possession of some stolen
property is not sufficient. 
            Viewing all of the evidence in a neutral light, we find the evidence is too weak, and the
evidence to the contrary too strong, to support a finding of guilt beyond a reasonable doubt.
Theft
            A person commits the offense of theft if, without the effective consent of the owner, they
appropriate  property  with  the  intent  to  deprive  the  owner  of  the  property.  Tex.  Pen.  Code
Ann. § 31.03(a). The charged theft was a part of, and occurred simultaneously with, the charged
burglary. For the reasons discussed above, we find the evidence legally sufficient, but factually
insufficient to support Rollerson's conviction for theft of a firearm.
Felon in Possession of a Firearm
            A person commits the offense of unlawful possession of a firearm if they have been
convicted of a felony and possess a firearm at any location other than the premises at which they live. 
Tex. Pen. Code Ann. § 46.04(a)(2). The State must prove the defendant was previously convicted
of a felony and intentionally or knowingly possessed a firearm. Rollerson stipulated at trial that he
had been convicted of the felony offenses of burglary of a habitation and failure to stop and render
aid May 19, 1998. As noted above, there was direct testimony that Rollerson was seen in possession
of several firearms rolled up in a blanket and a pistol tucked in his waistband. Viewing this evidence
in the light most favorable to the verdict, we find the trial court could have reasonably found all of
the elements of the crime had been proven beyond a reasonable doubt.



            Under the second review for a factual sufficiency challenge, all the evidence, supporting and
contrary, is considered. Rollerson did not offer any evidence to contradict the testimony that he was
in possession of a firearm. Therefore, viewing the evidence in a neutral light, we find the evidence
supports a finding of guilt beyond a reasonable doubt.
Deadly Weapon Finding
            The trial court made an affirmative finding that Rollerson used and exhibited a firearm during
the commission of each offense or during the immediate flight therefrom. Rollerson challenges the
sufficiency of the evidence to support these findings.
            To review evidence for legal sufficiency, this Court must view the evidence in the light most
favorable to the verdict and determine if a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992). The trial court appears to have based its findings solely on Rollerson's mere
possession of firearms. When applied to the special issue regarding the use or exhibition of a deadly
weapon during the commission of a felony offense, the question facing this Court is whether a
rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms
facilitated the associated felony. Gale v. State, 998 S.W.2d 221, 223–24 (Tex. Crim. App. 1999). 
            The Texas Court of Criminal Appeals has said, "'[U]sed . . . a deadly weapon' during the
commission of the offense means that the deadly weapon was employed or utilized in order to
achieve its purpose. Whereas 'exhibited a deadly weapon' means that the weapon was consciously
shown or displayed during the commission of the offense." Patterson v. State, 769 S.W.2d 938, 941
(Tex. Crim. App. 1989). Even simple possession of a firearm may be sufficient to support a deadly
weapon finding if such possession facilitates the associated felony. Id. 
            In Patterson, the appellant was convicted of possession of a controlled substance. A search
team executing a search warrant at a private residence found the appellant sitting on a couch in the
living room. A loaded .45 caliber revolver was found by the arresting officer concealed between the
appellant's leg and the end of the sofa. The officer also found the appellant's wallet and a pistol
"boot" holding ammunition for a .45 caliber weapon on a table next to the couch. Id. at 939. The
court found there was sufficient evidence to uphold the jury's finding that he used or exhibited a
deadly weapon in the course of possessing the contraband. Id. at 942. The court approved the
intermediate court's determination that appellant "'used' the firearm during the commission of the
felony offense . . . in a sense that the firearm protected and facilitated appellant's care, custody, and
management of the contraband." Id.
            The Texas Court of Criminal Appeals has held that, where the associated felony is unlawful
possession of a firearm by a felon, an affirmative deadly weapon finding cannot be based solely on
the defendant's possession of the firearm. Narron v. State, 835 S.W.2d 642 (Tex. Crim. App. 1992);
Ex parte Petty, 833 S.W.2d 145 (Tex. Crim. App. 1992). Therefore, the affirmative deadly weapon
finding pertaining to Rollerson's conviction for the offense of unlawful possession of a firearm by
a felon is inappropriate.
            The deadly weapon findings pertaining to the burglary and theft convictions are also
inappropriate. The trial court appears to have based its findings regarding those convictions solely
on Rollerson's mere possession of the firearm stolen during the burglary. Unlike in other burglary
cases, there is no evidence that Rollerson handled the firearm in such a manner that would indicate
he intended to use it for some purpose other than simply stealing it. In Gregg v. State, 820 S.W.2d
191 (Tex. App.—Fort Worth 1991, no pet.), during the burglary, the appellant found a shotgun in
the closet of the master bedroom of the complainant's home, loaded the gun, and placed it on top of
the bed in that room. The court held the appellant's actions were sufficient to support a deadly
weapon finding because, 
Certainly he would not have gone to the trouble to load the gun and place it in such
an accessible position had he simply intended to steal the gun; rather, the gun was
"used" for the purpose of effectuating this burglary in that the appellant could have
fired it upon being surprised or caught in the home by the complainant or a family
member, the police, or anyone else. Although he was not in actual physical
possession of the shotgun at the time of his arrest on the premises, appellant's act of
finding, loading, and moving the gun, constituted sufficient control and possession
of the gun as to support a finding that he "used" the gun during the commission of the
offense. 
Id. at 193. 
            In contrast, here there is no evidence Rollerson loaded the firearm, or positioned it in such
a way that he could use it against someone if he was surprised. The record shows that no one was
home when Rollerson committed the burglary and theft. Rollerson was not confronted by law
enforcement officers until the next day, and he did not possess a firearm at that time. Rollerson's
possession of the firearm did not facilitate the burglary, as that crime would have been complete
whether or not he found and possessed the weapon. Nor did the firearm facilitate his flight from the
burglary, as he was not confronted by anyone, either civilian or law enforcement officers. His
possession of the firearm did not facilitate the theft, as it was his very act of possession that
constituted the crime.
            As the court stated in Petty, "In the present case, the weapon was not 'used' in furtherance of
any collateral felony. Thus, because there was no associated felony facilitated by the Applicant's
possession of the deadly weapon, the holding in Patterson dictates that the affirmative finding of the
use of a deadly weapon was error." Petty, 833 S.W.2d at 145. The same is true here. We hold the
evidence is legally insufficient to support the trial court's affirmative deadly weapon findings with
respect to the burglary and theft convictions. Therefore, on remand, no deadly weapon finding may
be sought.
 
Conclusion
            We find the evidence to be legally sufficient, but factually insufficient to support the
convictions for burglary of a habitation and theft of a firearm. Accordingly, we reverse those
judgments and remand for a new trial. The State is not permitted, on retrial, to seek a deadly weapon
finding. We find the evidence to be both legally and factually sufficient to support the conviction
for possession of a firearm by a felon. However, we reform that judgment to delete the affirmative
deadly weapon finding.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 24, 2006
Date Decided:             May 17, 2006

Publish