Mark GRANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 57828.

Court of Criminal Appeals of Texas, Panel No. 3.

June 21, 1978.

Robert C. Roe, Jr. (on appeal only), Fort Worth, for appellant.

---

Tim Curry, Dist. Atty., Marvin Collins, Howard Borg and Candyce Howell, Asst. Dist. Attys., Fort Worth, for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

## OPINION

ODOM, Judge.

This appeal is from an order revoking probation. On September 13, 1976, appellant pled guilty to the offense of delivery of more than one-fourth ounce of marihuana, and his punishment was assessed at three years in the Texas Department of Corrections. Imposition of sentence was suspended and probation was granted, subject to certain terms and conditions. Condition (a) of the order of probation was that appellant "commit no offense against the laws of this or any other state or the United States."

On May 13, 1977, the State filed a motion to revoke probation alleging that on or about May 4, 1977, appellant committed the offense of theft. On June 13, 1977, following a hearing on the State's motion, the court revoked appellant's probation, finding that he had committed theft on May 4, 1977.

■ The sufficiency of the evidence is challenged.

The record reflects that on May 4, 1977, between 11:00 and 11:30 p. m., a Toro lawnmower was taken from Jesse Standley's vehicle which was parked in front of May and Kay's Beer Lounge located at 3536 Hemphill in Ft. Worth. Standley called the police on finding that the lawnmower had been taken. He testified that he did not see anyone take the mower.

Officer Salinas of the Ft. Worth Police Department was patrolling in the vicinity and immediately before receiving the radio call informing him of the theft noticed two boys and a man pushing a lawnmower in the parking lot of the Starlight Bar, which is located at 4221 Hemphill. Upon receiving the radio call, Salinas proceeded to May and Kay's Beer Lounge and contacted Standley. After receiving a description of the lawnmower from Standley, Salinas went back to the Starlight Lounge where he had earlier seen the mower and three individuals. After making his investigation at the scene, appellant was placed under arrest. Salinas testified that when he had earlier seen the three individuals with the lawnmower appellant was the one pushing the mower.

Charles Sheppard testified for the State and related that he had bought the lawnmower in question from a Lonnie Weehunt in the late evening of May 4, 1977. He stated that others at the Starlight Lounge knew that he was in the market for a lawnmower but that he did not tell appellant this. Sheppard testified that he arrived at the lounge after 10:00 p. m. on May 4, 1977, and did not leave until after the police arrived. He stated that he had played a few games of pool with the appellant during this time period and that he did not see appellant leave the bar although he could not testify for sure that appellant never left. Sheppard testified that it was Weehunt who approached him concerning the buying of the lawnmower and that it was Weehunt who received the purchase money. Sheppard further stated that he asked the appellant to help him load the mower that he had purchased from Weehunt into his truck due to the fact that he suffered from some physical incapacity. Sheppard related that as far as he knew the only connection that appellant had with the transaction was the fact that appellant helped him put the mower into his vehicle. Sheppard indicated that the first time that he saw the lawnmower was when he saw an individual, later identified as Weehunt, unload the mower from his car. He further testified that he did not see appellant come to the bar with the lawnmower. A discussion was held concerning price and appellant came out of the bar and helped load the mower into Sheppard's car. Although the record is not clear, appellant apparently was present during a part of these discussions.

Lonnie Weehunt testified for the defense and stated that he purchased the mower in

question from an unidentified man a short time before he sold it to Sheppard. He testified that appellant did not steal or take the lawnmower and that appellant did help load the mower into Sheppard's car. He further stated that he was paid by Sheppard for the sale of the mower. He testified that Sheppard told him that he was looking for a mower and that appellant was not present when this discussion transpired. He stated that when he and Sheppard were discussing price appellant was outside the bar on the porch and was not standing close enough to hear what was being said. He also testified that although appellant lifted the mower into Sheppard's truck he did not push the mower.

Lois Smith testified that she worked at the Starlight Lounge and that on the evening of May 4, 1977, between 10:30 and 12:00 p. m. the appellant did not leave the lounge except for a brief moment to help Sheppard with the lawnmower.

The foregoing evidentiary summation establishes that the State offered no direct evidence that appellant committed the theft. The State relies solely upon possession as evidence of guilt. In *Crain v. State*, Tex.Cr.App., 529 S.W.2d 774, quoting from *McKnight v. State*, Tex.Cr.App., 399 S.W.2d 552, the rule was stated as follows:

"To warrant an inference or presumption of guilt from the circumstances alone of possession, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant."

In the present case we hold that the evidence was insufficient "to warrant an inference or presumption of guilt from the circumstances alone of possession . . ." Although the possession was recent and evidently unexplained, the evidence does not establish that it was *personal* and that it involved *a distinct and conscious assertion of property by the appellant*. In *5 Branch's*

*Annotated Penal Code*, 2nd Edition, Section 2650, it is stated:

"(A) defendant is not shown to have been in possession of the stolen property if the facts relied on by the state to show such possession do not involve a distinct and conscious assertion of property by the defendant."

The uncontroverted evidence adduced at the revocation hearing established that the only contact appellant had with the lawnmower was when he helped Sheppard load it into his truck. Whether or not appellant pushed the lawnmower from Weehunt's car to Sheppard's truck while both vehicles were parked in the Starlight Lounge parking lot in addition to lifting the mower into the truck, we fail to see how the State has established "a distinct and conscious assertion of property by the appellant." While the trial court is the "sole trier of the facts, the credibility of the witnesses and the weight to be given the testimony" at a revocation of probation hearing,[1] it is nonetheless incumbent upon the State to prove every element of the offense by a preponderance of the evidence. *Reed v. State*, Tex.Cr.App., 533 S.W.2d 35. Upon the record before us, we conclude that the State has failed to do so. The State's reliance on *Carter v. State*, Tex.Cr.App., 493 S.W.2d 789, is misplaced. In that case two tags which had been attached to the goods before they were stolen were found in appellant's billfold at the time of arrest; moreover, the evidence therein established that appellant had attempted to sell a part of the stolen goods the day before.

Accordingly, we hold that the trial court abused its discretion when it revoked appellant's probation in that the evidence presented was insufficient to establish that appellant violated condition (a) of his probation by committing the offense of theft as alleged in the State's motion to revoke.

The judgment is reversed and the cause is remanded.

1. *Ross v. State*, Tex.Cr.App., 523 S.W.2d 402, 403, and cases cited therein.