NUMBER 13-07-00633-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

ERIC DESHON SORRELLS, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 331st District Court

of Travis County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Vela


Memorandum Opinion by Chief Justice Valdez
 

 A jury found appellant, Eric Deshon Sorrells, guilty of aggravated robbery, a first-degree felony, and assessed punishment at twenty years' imprisonment. See Tex. Penal
Code Ann. § 29.03 (Vernon 2003). In four points of error, Sorrells contends that: (1) the
trial court erred in refusing to charge the jury on the lesser-included offense of assault; (2)
the evidence supporting his conviction is legally insufficient; (3) the evidence supporting
his conviction is factually insufficient; and (4) the trial court erred in refusing to sever
Sorrells's case from his co-defendant. Because we hold that the evidence is legally
insufficient to prove aggravated robbery, we reform the judgment to reflect conviction of the
lesser-included offense of assault by threat and affirm the judgment as reformed. We
reverse the judgment as to punishment and remand the case for a new hearing on
punishment.I. Background

 In the early morning hours of January 30, 2005, after spending a Saturday night on
Austin's Sixth Street, Frances Reynolds waited with a friend on a curb outside of the Spill
club ("Spill") for her boyfriend, Nathaniel Rice, who was retrieving her car from a nearby
parking lot. Reynolds had consumed a few cherry vodka sours, felt "a little bit" tipsy, and
the heels that she wore caused her feet to hurt; she therefore leaned against a silver
Mercedes SUV parked on the street. A white male approached Reynolds and told her to
"get off the car" because "he knew whose car it was." Reynolds stood up for a moment,
then leaned back onto the vehicle. The man walked away and into Spill. Moments later,
a black male wearing a "block style" black and gray sweater and a black leather jacket,
later identified as Sorrells, emerged from Spill. He approached Reynolds, and told her to
"get the f*** off the car" because she was damaging it. Reynolds turned to see if there
were any scratches on the hood; when she turned back around, she saw that Sorrells had
a gun. With gun in hand, Sorrells hit Reynolds across the side of the head. Reynolds
swung back in "self-defense." Sorrells pushed her, and she pushed back. The events that
ensued are best described from the vantage point of each witness. 


1. The Altercation

 Reynolds testified that shortly after the scuffle between she and Sorrells ensued,
her boyfriend, Rice, arrived on the scene. As Rice approached, Sorrells turned, pulled
back the slide of the gun, and said, "[D]o you have a problem with me, too?" Rice swung
and punched Sorrells, and the two started fighting. A man wearing a blue, "flannel-type"
jacket ran up to Rice and punched him. Rice fell to the ground. Reynolds then saw the
man in the flannel jacket hold a gun to the back of Rice's head. Reynolds ran to Spill's
entrance and asked for someone to call 911, but no one complied. When she turned back
to check on Rice, the altercation had ended. Rice had a bloody mouth, a black eye, and
a ripped shirt. He told Reynolds that his jewelry had been stolen.

 Rice testified that after retrieving Reynolds's car, he drove to the front of Spill and
saw three black males standing at arms length from Reynolds. As Rice stepped out of the
car, he noticed Reynolds "scuffling, fighting, and arguing" with Sorrells. Rice approached,
asking, "[W]hat the h***?" At that moment, Sorrells "pulled out a gun and cocked it at
[Rice]"; this was the first time that Rice saw the gun. Sorrells pointed the gun at Rice's
torso, and Rice "pushed the gun out of the way and swung at Sorrells." Sorrells struck
back, hitting Rice with the gun. At that moment, a man wearing a flannel jacket punched
Rice on the right side of the head, Rice was knocked to the ground, and "jumped by
multiple people." At some point, the beating ceased, and the people hitting him dispersed. 
Rice became aware that he was no longer wearing his Figaro necklace with a Versace lion
medallion, valued at approximately $1,000, or his three to four inch Versace cross
embellished with several diamonds, worth approximately $2,200. When police arrived
moments later, Rice told them that his jewelry had been stolen. As a result of the
altercation, Rice sustained scrapes, bruises, and a busted lip. 

 Reynolds and Rice's friend, Kevin Fritz, also testified. Fritz had accompanied Rice
to the parking lot to retrieve Reynolds's car. As the men drove to the front of Spill, Fritz
saw Reynolds arguing with Sorrells. Sorrells hit Reynolds, pulled out a gun, pulled the
slide back, and hit Reynolds again. Fritz followed as Rice got out of the car and
approached Sorrells. Upon noticing Rice, Sorrells turned and pointed the gun at Rice. 
Rice took a swing at Sorrells, and then another man came up behind Rice and hit him in
the head. A third man joined the fight, and the two men "jumped" Rice. Fritz saw Sorrells
point a gun at Rice. Fritz ran up and pushed Sorrells out of the way. The men turned their
attention from Rice and began fighting with Fritz. Someone hit Fritz with a gun; after being
"dazed" and stumbling for a few seconds, Fritz looked up and saw the three men running
into Spill. At some point during the altercation, Fritz noticed Rice's lion medallion necklace
on the ground. 

 Rice's friend, Omar Ponce, testified that he was outside Spill on the night in question
and saw Rice arguing with a black male that he later identified as Andre Oliver, the co-defendant in this case. Ponce testified that as he moved towards Rice in an attempt to
intervene, Oliver pointed a gun at him. However, on cross-examination, Ponce testified
that a man wearing a black leather jacket pointed a gun at him, and that the man in the
black leather jacket was the only person that Ponce saw in possession of a gun.

2. The Apprehension

 Officer Charles Riley testified that in the early morning hours of January 30, 2005,
he was dispatched to an incident outside of Spill. Officer Riley arrived on the scene within
twenty or thirty seconds and saw several people in front of Spill; everyone was loud and
yelling that "someone had taken something" and "someone had a gun." Officer Riley
learned that the gunman, a black male wearing a black leather jacket, had gone inside
Spill. Concerned he would have trouble entering Spill, Officer Riley ran down the block,
turned the corner and ran into the alley behind Spill. Officer Riley saw three individuals in
the otherwise desolate alley. The individuals were about three-quarters of the way down
the alley and were walking in the direction opposite Officer Riley. Officer Riley shouted,
"Austin police, show me your hands." The individuals continued walking, with their hands
in their pockets. Officer Riley quickly walked towards the individuals, continued to identify
himself, and asked to see their hands. He also radioed to other officers that three potential
suspects were in the alley. One individual, later identified as Rachel Hardeman, turned
and looked at Officer Riley, then, while still walking, removed her hand from her jacket
pocket and deposited an object into the side of a cardboard recycling receptacle. She then
placed her hand back inside her pocket. When additional officers arrived, Officer Riley
directed one to secure the receptacle, and the others assisted Officer Riley in detaining the
individuals. 

 After the individuals were secured, Officer Riley searched the receptacle. Inside,
he found "a bunch of boxes" and "a pistol." Officer Riley began his investigation by
focusing on Hardeman because she had thrown the gun into the receptacle. Officer Riley
noticed that the black leather jacket Hardeman was wearing was too big for her. Inside a
pocket of the jacket, Officer Riley located a lion medallion necklace, which was later
identified as the one Rice reported stolen. The other individuals detained were both black
males. One, later identified as Oliver, wore a blue denim jacket. An empty, collapsible
shoulder holster was found in an interior pocket of his jacket. The other man, later
identified as Sorrells, wore a black and tan sweater, but was not wearing a jacket. Rice's 
$2,200 Versace cross was never found. 

 The officers placed each suspect in a separate patrol car and drove them to the
front of Spill. The officers separately asked Reyonlds, Rice, and Fritz if they could identify
any of the individuals in the patrol cars. No one identified Hardeman. Officer Brian Green
testified that he separately took Reynolds, Rice, and Fritz to the car where Sorrells was
seated. Each identified Sorrells as the man who had been wearing a black leather jacket.

 On June 14, 2006, Sorrells was indicted by a grand jury for aggravated robbery. 
Sorrells pleaded not guilty and, on August 14, 2007, was tried with Oliver by jury. After the
State's case in chief, Oliver called one witness, and Sorrells called none. The State
tendered the charge that was ultimately submitted to the jury. The tendered charge
abandoned the first paragraph of the indictment. (1) Sorrells requested the lesser-included
offense of assault, but his request was denied. The jury found Sorrells guilty of aggravated
robbery with a deadly weapon, the only offense the jury was instructed on, and assessed
punishment at twenty years' imprisonment. This appeal ensued.

II. Legal Sufficiency

 In his second point of error, Sorrells challenges the legal sufficiency of the evidence
supporting his conviction. 

A. Standard of Review and Applicable Law 

 In conducting a legal sufficiency review, the reviewing court must ask whether "'any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt'--not whether 'it believes that the evidence at the trial established guilt
beyond a reasonable doubt.'" Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App.
2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original)). 
We do not reevaluate the weight and credibility of the evidence, and we do not substitute
our own judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000) (en banc); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. 
Beckham, 29 S.W.3d at 151. We must resolve any inconsistencies in the evidence in favor
of the judgment. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 

 Legal sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). Under
a hypothetically correct jury charge, a person commits aggravated robbery "if he commits
robbery . . . and he . . . uses or exhibits a deadly weapon . . . ." Tex. Penal Code Ann. §
29.03. A firearm is a deadly weapon. Id. § 1.07(a)(17) (Vernon Supp. 2009). Robbery
requires a nexus between the assault and the theft. See Cooper v. State, 67 S.W.3d 221,
223 (Tex. Crim. App. 2002). A person commits robbery "if, in the course of committing
theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally
or knowingly threatens or places another in fear of imminent bodily injury or death." Tex.
Penal Code Ann. § 29.02 (Vernon 2003). "In the course of committing theft" is defined
as "conduct that occurs in an attempt to commit, during the commission, or in immediate
flight after the attempt or commission of theft." Id. § 29.01(1) (Vernon 2003).

 A person commits theft if he unlawfully appropriates property with intent to deprive
the owner of property; appropriation of property is unlawful if it is without the owner's
effective consent. Id. § 31.03(a), (b)(1) (Vernon Supp. 2009). The penal code defines
"[a]ppropriate" as "bring[ing] about a transfer or purported transfer or title to or other
nonpossessory interest in property, whether to the actor or another" or "acquir[ing] or
otherwise exercis[ing] control over property other than real property." Id. § 31.01(4)
(Vernon Supp. 2009). A person acts intentionally with respect to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause the result. 
Id. § 6.03(a) (Vernon 2003).

B. Legally Insufficient Evidence of Theft

 Although juries are permitted "to draw multiple reasonable inferences as long as
each inference is supported by the evidence presented at trial," a jury is "not permitted to
draw conclusions based on speculation." Hooper v. State, 214 S.W.3d 9, 15-16 (Tex.
Crim. App. 2007). In order to reach the conclusion that Sorrells committed aggravated
robbery, the jury was first required to find that he committed theft. (2) See Tex. Penal Code
Ann. § 29.02. 

 The jury heard testimony that Rice's necklace was found in the pocket of the jacket
worn by Hardeman. To support a finding of theft, the jury had to draw multiple inferences;
the jury had to infer that Sorrells gave his jacket to Hardeman after inferring that Sorrells
appropriated Rice's necklace and placed it in the pocket of the black leather jacket. The
first inference the jury had to make was that the black leather jacket worn by Hardeman at
the time of her apprehension belonged to Sorrells. The jury heard testimony that Sorrells
was wearing a black leather jacket at the time of the altercation and that after the
altercation he ran inside Spill. Shortly after the altercation, Sorrells, no longer wearing a
jacket, was found walking with Hardeman and Oliver in the alley behind Spill. When police
spotted the trio in the alley, officers testified that Sorrells was no longer wearing a black
leather jacket, and Hardeman was wearing a black leather jacket that appeared to be too
big for her. Based on this circumstantial evidence, the jury could have reasonably inferred
that the jacket worn by Hardeman belonged to Sorrells. See Hooper, 214 S.W.3d at 16. 
 The next inference the jury had to make was that Sorrells committed theft. There
is no direct evidence that theft occurred at the time of the assault. Similarly, there is scant
circumstantial evidence that Sorrells committed assault "in the course of committing theft." 
The only evidence regarding the necklace that was presented to the jury was that: (1) Rice
was wearing his necklace when he confronted Sorrells; (2) after Oliver and another man
joined the altercation against Rice, Fritz saw Rice's necklace on the ground; (3) none of
the witnesses to the altercation identified Hardeman as being present at the time of the
altercation; (4) Sorrells, Oliver, and Hardeman were arrested behind Spill; and (5)
Hardeman was wearing a black leather jacket that contained Rice's necklace. 

 1. Aggravated Robbery as a Party

 Texas law provides that a person is criminally responsible as a party to an offense
if the offense is committed by his own conduct, by the conduct of another for which he is
criminally responsible, or both. See Tex. Penal Code Ann. § 7.01(a) (Vernon 2003). For
a defendant to be guilty under the law of parties, the State must prove the guilt of another
as the primary actor. Richardson v. State, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993);
Barnes v. State, 62 S.W.3d 288, 296 (Tex. App.-Austin 2001, pet. ref'd). Because the trial
court provided a parties charge to the jury, the State could establish the offense of theft by
showing that: (1) Sorrells himself unlawfully appropriated the lion medallion necklace; or
(2) Sorrells solicited, encouraged, directed, aided, or attempted to aid the primary actor
with the intention of promoting or assisting the primary actor with the theft. See Tex. Penal
Code Ann. §§ 7.01, 7.02 (Vernon 2003). 

 The only evidence the State presented that Oliver or the other unidentified man
involved in the assault committed theft was their participation in the assault. The State's
evidence does not prove beyond a reasonable doubt that either Oliver or the unidentified
man was the primary actor. Additionally, the only evidence the State presented to prove
that Hardeman was the primary actor was that Rice's necklace was found in the pocket of
the jacket that she was wearing. The possession of stolen property may justify an
inference of guilt if that possession is personal, recent, and unexplained and involves a
conscious assertion of control over the property. Grant v. State, 566 S.W.2d 954, 956
(Tex. Crim. App. 1978). Assuming, without deciding, that the State met its burden of
proving, beyond a reasonable doubt, that Hardeman was the primary actor, there is no
evidence that Sorrells solicited, encouraged, directed, aided, or attempted to aid Hardeman
in committing the theft. Therefore, the law of parties provides no support for the State's
argument that the evidence was legally sufficient.

 2. Aggravated Robbery as a Principal

 Mere presence of an accused at the scene of an offense is not alone sufficient to
support a conviction; however, it is a circumstance tending to prove guilt which, combined
with other facts, may suffice to show that the accused was a participant. Valdez v. State,
623 S.W.2d 317, 321 (Tex. Crim. App. 1979). We, therefore, must determine whether
Hardeman's possession of the necklace, coupled with Sorrells's presence at the scene of
the assault, provided the jury with sufficient evidence to infer that Sorrells, acting as the
principal, acquired Rice's necklace. Where a defendant is found in unexplained
possession of recently stolen property, the fact finder is permitted to draw an inference of
guilt. Hardesty v. State, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). "To warrant such a
presumption the possession must be personal, recent, and unexplained, and must involve
a distinct and conscious assertion of right to the property." Todd v. State, 601 S.W.2d 718,
720 (Tex. Crim. App. 1980). At the time of Sorrells's arrest, although the necklace was
found in a jacket that the jury could have inferred belonged to Sorrells, neither the jacket,
nor the necklace were found on his person; instead, Hardeman was wearing the jacket. 
This evidence is insufficient to show that Sorrells had personal possession of the necklace
at any point in time or that he asserted a distinct and personal right to it. Cf. Rodriguez v.
State, 549 S.W.2d 747, 749 (Tex. Crim. App. 1977) (finding evidence insufficient to support
a theft conviction where a stolen file box was found in a closet of a bedroom which the
defendant shared with another). Therefore, evidence that the necklace was found in the
pocket of Sorrells's jacket does not create the permissible inference that he committed
theft. 

 Based on the foregoing, there were no facts in evidence from which a rational jury
could infer that Sorrells committed theft. See Laster, 275 S.W.3d at 518. Accordingly, the
evidence is legally insufficient to support a conviction of aggravated robbery.

C. Evidence is Insufficient to Prove a Nexus Between the Assault and the Theft

 Even assuming that the evidence is sufficient to prove that Sorrells committed theft,
as previously noted, robbery requires a nexus between the assault and the theft. See
Cooper, 67 S.W.3d at 223 (Tex. Crim. App. 2002) ("the nexus requirement for capital
murder involving murder in the course of a robbery is the same as the nexus requirement
in a robbery between the assault and the theft"). Proof that theft was committed as an
afterthought, and unrelated to the assault, does not support a conviction for robbery. See
e.g., Moody v. State, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992) ("proof of a robbery
committed as an afterthought and unrelated to a murder would not provide sufficient
evidence of capital murder"). In the present case, no evidence was presented that an
intent to commit theft arose before the assault. However, Hardeman's possession of the
necklace provides some evidence that the intent to commit theft could have arisen during
or immediately after the assault. The general rule is that "a theft occurring immediately
after an assault will support an inference that the assault was intended to facilitate the
theft." Cooper, 67 S.W.3d at 224. 

 Although the court of criminal appeals has recognized that there may be
circumstances where "evidence of a motive other than theft can negate the natural
inference that arises when a theft immediately follows an assault," the court has held that
"the inference will not be negated by evidence of an alternative motive that the jury could
rationally disregard." Id. In the present case, the evidence revealed that Sorrells's motive
for the assault was to get Reynolds away from the silver Mercedes SUV and to keep Rice
from interfering. In light of the fact that (1) there is no evidence that Sorrells approached
Reynolds in an attempt to appropriate her property; (2) Sorrells did not approach Rice in
an attempt to appropriate his necklace; (3) there is no evidence that Sorrells was a party
to theft; and (4) no words, actions, or conduct during the commission of the assault indicate
that Rice's assault was committed to facilitate the appropriation of his necklace, a juror
could not rationally disregard that Sorrells's only motive was to move Reynolds from the
vehicle and keep Rice from interfering. While we do not condone Sorrells's heinous
actions, based on the evidence, we cannot conclude that Sorrells's assault of Rice was
intended to facilitate the theft of Rice's necklace. Therefore, the evidence is legally
insufficient to support Sorrells's conviction of aggravated robbery because no rational juror
could have found a nexus between Rice's assault and the appropriation of his necklace. 
Sorrells's second issue is sustained.

III. Reformation of Judgment

 A court of appeals may modify the trial court's judgment to reflect guilt of a lesser-included offense and affirm it as modified. Tex. R. App. P. 43.2(b); Bigley v. State, 865
S.W.2d 26, 27-28 (Tex. Crim. App. 1993). However, the court may do this only if (1) the
court finds that the evidence is insufficient to support conviction of the charged offense but
sufficient to support conviction of the lesser-included offense and (2) either the jury was
instructed on the lesser-included offense or one of the parties asked for but was denied
such an instruction. (3) Collier v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999)
(plurality opinion); Ross v. State, 9 S.W.3d 878, 882 (Tex. App.-Austin 2000, pet. ref'd).

 In the present case, Sorrells requested an instruction on the lesser-included offense
of assault. The statutory definition of simple assault sets out three distinct criminal
offenses under section 22.01(a)(1)-(3). Tex. Penal Code Ann. § 22.01(a) (Vernon Supp.
2009). The penal code provides:

(a) A person commits an offense if the person:


(1) intentionally, knowingly, or recklessly causes bodily injury to another,
including the person's spouse;


(2) intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse; or


(3) intentionally or knowingly causes physical contact with another person
when the person knows or should reasonably believe that the other will
regard the contact as offensive or provocative.


Id. These offenses are often referred to as: "bodily injury" assault, assault by threat, and
"offensive contact" assault. Landrian v. State, 268 S.W.3d 532, 540 (Tex. Crim. App.
2008). Because neither bodily injury nor offensive contact are required to prove
aggravated robbery as charged, neither section 22.01(a)(1) or (a)(3) are lesser-included
offenses. (4) See Hall v. State, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); see also
Tex. Penal Code Ann. § 22.01(a). However, because the elements required to prove
assault by threat are "established by proof of the same or less than all the facts required
to establish the commission of the offense charged," assault by threat, a Class C
misdemeanor, is a lesser-included offense. Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 2006); see Tex. Penal Code Ann. § 22.01(a)(2); (c).

 The State offered ample evidence that Sorrells intentionally or knowingly threatened
Rice with imminent bodily injury. See Tex. Penal Code Ann. § 22.01(a)(2). "The gist of
the offense of assault, as set out in [s]ection 22.01(a)(2), is that one acts with intent to
cause a reasonable apprehension of imminent bodily injury (though not necessarily with
intent to inflict such harm)." Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). 
Rice testified that Sorrells pointed a gun at him and hit him several times. The jury heard
similar testimony from Fritz and Reynolds. Additionally, Rice testified that he was "afraid"
when he saw Sorrells point the gun at him. Viewing this evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have found beyond
a reasonable doubt that Sorrells intentionally or knowingly threatened Rice with imminent
bodily injury. See McGowan v. State, 664 S.W.2d 355, 357-58 (Tex. Crim. App. 1984). 
We therefore hold that the evidence is legally sufficient to support a conviction of assault
by threat.

 The evidence is also factually sufficient to support a conviction of assault by threat. 
Reynolds testified that Sorrells pointed a gun at Rice. She testified that during the
encounter, Sorrells was wearing a "block-style" black and gray sweater with a leather
jacket. Additionally, Rice and Fritz also testified that a black male wearing a black leather
jacket pointed a gun at Rice. There were some inconsistencies in the manner and at which
point of the altercation Sorrells pointed a gun at Rice; however, Reynolds, Rice, and Fritz
each identified Sorrells as the man who pointed a gun at Rice. The jury heard conflicting
testimony from Ponce, who testified on direct examination that, Oliver, Sorrells's co-defendant, was the only man who had a gun. However, on cross-examination, Ponce
testified that a man wearing a black leather jacket was the only man who had a gun. 
Reviewing the evidence in a neutral light, we cannot conclude that the evidence is so weak
that a conviction would be clearly wrong and manifestly unjust or that it would be against
the great weight and preponderance of the evidence. See e.g., Watson, 204 S.W.3d at
414-15. We conclude that the evidence is factually sufficient to support a conviction of
assault by threat. Accordingly, we will reform the judgment to reflect a conviction of the
lesser-included offense of assault by threat. See English v. State, 171 S.W.3d 625, 629-30
(Tex. App.-Houston [14th Dist] 2005, no pet.). Because the punishment for Sorrells's
original conviction differs from the conviction as reformed, we reverse that part of the
judgment assessing punishment. See id. at 631; see also Garrett v. State, 161 S.W.3d
664, 672 (Tex. App.-Fort Worth 2005, pet. ref'd).

IV. Conclusion

 We reform the judgment of guilt to reflect conviction of the lesser-included offense
of assault by threat and affirm the judgment as reformed. We reverse the judgment as to
punishment and remand the case to the trial court for a new hearing on punishment. (5) 

 ________________________

 ROGELIO VALDEZ

 Chief Justice 


Dissenting Memorandum Opinion 

by Justice Vela.


Do Not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 12th day of November, 2009. 
1. The first paragraph provided that:


Sorrells . . . did then and there, while in the course of committing theft of property and with
intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly
cause bodily injury to Nathaniel Rice by hitting Nathaniel Rice with a hand, and the said Eric
Deshon Sorrells did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]


(Emphasis added).
2. The dissent contends that we have erroneously reviewed the evidence by focusing on a completed
theft. Although we agree that aggravated robbery may be proven by attempted theft, based on the evidence
presented, the dissent's conclusion that Sorrells "attempted to acquire" Rice's necklace is incongruous with
the inferences the dissent concludes that the jury made. The dissent argues that "a rational jury could
reasonably conclude that Sorrells attempted to appropriate Rice's necklace by picking it up and putting it in
his jacket pocket." However, if it is reasonable for the jury to infer that Sorrells, with the intent to deprive Rice
of his property, picked up Rice's necklace and put it in his jacket pocket, the jury implicitly found Sorrells guilty
of a complete, rather than an attempted, theft. See Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2009). 


 A person attempts to commit theft if he, with specific intent to commit theft, "does an act amounting
to more than mere preparation that tends but fails to effect the commission of the offense intended." Id. §
15.01(a) (Vernon 2003). Theft involves the act of unlawful appropriation. See id. § 31.03(a), (b)(1). A person
unlawfully appropriates another's property when, without the owner's effective consent, he "acquire[s] or
otherwise exercises control over property other than real property." Id. § 31.01(4) (Vernon Supp. 2009). A
person who, with the intent to deprive, and without the owner's effective consent, picks up the property of
another and places it in his pocket, commits theft. See id. § 31.03(a), (b)(1). 


 In an attempt to lessen the amount of evidence required to support Sorrells's aggravated robbery
conviction, the dissent endeavors to lessen the evidence required to prove aggravated robbery by stating that
the jury's inferences do not have to be great enough to prove a completed theft, and that they merely have
to prove that a lesser offense, an attempt, occurred. While we agree that an aggravated robbery conviction
may be based on attempted theft, we do not agree, as the dissent implicitly advocates, that a jury can infer
that although Sorrells intended to deprive Rice of his property when he appropriated the necklace, no
completed theft occurred. Indeed, the act of unlawful appropriation, when coupled with the intent to deprive
the owner of his property, is the very definition of theft. See id. Therefore, because Sorrells's conviction of
aggravated robbery will only stand if the jury infers that Sorrells appropriated Rice's necklace, we focus our
analysis on whether the jury could reasonably infer that Sorrells committed theft.

 
3. Although the evidence seems to support a conviction for aggravated assault, neither party requested
a lesser-included instruction for that offense. Therefore, our analysis is limited to simple assault. See Collier
v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality opinion).
4. After dropping the first paragraph of the indictment, the indictment read:


Sorrells did then and there, while in the course of committing theft of property and with intent
to obtain or maintain control of said property, intentionally or knowingly threaten or place
Nathaniel Rice in fear of imminent bodily injury or death, and the said Eric Deshon
Sorrells did then and there use or exhibit a deadly weapon, to-wit: a firearm[.] 


(Emphasis added).
5. In light of our disposition, we need not discuss Sorrells's remaining issues. These issues, which
concern the denial of Sorrells's request for a jury charge on the lesser-included offense of assault, factual
sufficiency, and the denial of Sorrells's motion to sever would not afford Sorrells any greater relief than already
afforded herein. See Tex. R. App. P. 47.1.