

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00301-CR

JAMES LEMONS JR.                                          APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, Appellant James Lemons, Jr. appeals his conviction for burglary of a habitation.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

Ronnietta Wimbrey returned to the house where she lived with her step-mother, Joyce Harris, to discover a man's legs emerging from the living room window.  Wimbrey called 911, and Lemons, who roughly matched the description Wimbrey provided to responding Fort Worth Police Officer Thomas Hauck, was arrested ten minutes later in a nearby parking lot and later indicted for burglary of a habitation.  Lemons pleaded not guilty to the charge, but the trial court found him guilty.[2]  After Lemons pleaded "true" to the two allegations in the habitual offender notice, the trial court sentenced him to the statutory minimum of twenty-five years' confinement.  This appeal followed.

## III.  Sufficiency of the Evidence

Lemons complains in his second point that the evidence is insufficient to support his conviction.

## A.  Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*,

---

[2]Because Lemons challenges the sufficiency of the evidence to support his conviction, we set out the evidence in detail below.

443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

3

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

## B. Evidence at Trial

### 1. Ronnietta Wimbrey's Testimony

Wimbrey, age twenty-two, testified that around 9:00 p.m. on December 25, 2009, she pulled into the driveway of the home she shared with her step-mother, Joyce Harris, and saw a pair of legs emerge from a window. She turned off her car and called 911. As she waited for the 911 dispatcher to answer her call, a man climbed out of the window, walked past the passenger side of her car, and ran away. She confirmed that both the house's front porch light and a streetlight across the street were lit. She said that she and the man stared at each other as the man walked past her car. She also testified that the police arrived approximately two minutes after she contacted 911, that she let the officers in the house, and that she described the individual she saw exiting through the window to the officers. She confirmed that Harris, who arrived a short time later, provided the officers with a list of items believed to be missing from the home.

Wimbrey identified Lemons at trial. She also said that she saw Lemons in the hallway outside of the courtroom and had pointed him out but that the prosecutor had not asked her to identify anyone in the hallway. Wimbrey based her identification on what she saw on December 25, 2009. She said that within ten minutes after the officers arrived at her home, an officer took her to some

nearby apartments and asked her to identify some items displayed on the trunk of a patrol car. The police then asked her to look at an individual, and that even though he was no longer wearing the hoodie, she recognized the man's pants, shoes, and facial features. Wimbrey knew instantly that this was the man she had seen crawling out of her window.

During cross-examination, Wimbrey admitted that because the man wore a jacket zipped to the top with the hood pulled over his head, she did not see the sides of his face, his hair, or if he was wearing anything on his head; did not notice if he had a bad complexion; and did not know what type of shirt he had on under the jacket. But she reiterated that she did see his nose, mouth, facial hair, outer clothing, and shoes. She also said that the man carried a white plastic bag that looked "pretty full" and that appeared to contain more items than were later recovered from Lemons's pockets.

### 2. Officer Thomas Hauck's Testimony

Officer Hauck testified that he was dispatched at 9:00 p.m. for a burglary in progress, that he arrived at Wimbrey and Harris's house at 9:10 p.m., and that he issued a radio broadcast of Wimbrey's description of the burglar—a slender black male, roughly six feet tall, with a mustache and goatee, and wearing a black hoodie jacket, tennis shoes, and blue jeans. Officer Hauck stated that he searched the house, that the house was in disarray, and that Wimbrey provided him with a list of items she believed to be missing. Officer Hauck said that a few

5

minutes later, he learned that Officer James Alexander saw a suspicious person darting through a nearby apartment complex's parking lot.

Officer Hauck went to the apartment complex. He and Officer Alexander found Lemons crouching next to a car. Officer Hauck testified that the officers detained Lemons because he matched the description that Wimbrey had provided. He stated that the officers told Lemons that he was being detained, performed a frisk search, and noted that Lemons had bulging pockets. Officer Hauck said that after Lemons consented to a search, the officers searched his pockets, which contained a wallet, four packs of cigarettes, two watches, five rings, a set of earrings, a gold bracelet, a cigarette lighter, and a wrench. The officers believed that some of those items belonged to Wimbrey and Harris. Officer Hauck identified Lemons as the person whom he had detained and in whose pockets the items were found on the night of the burglary.

During cross-examination, Officer Hauck confirmed that on the night of the burglary, Lemons claimed that he purchased the items from a black man driving a white Taurus and planned to resell them at a profit to purchase crack cocaine. He also said that Lemons was not wearing a hoodie when he was detained and that the officers searched for but did not find any discarded clothing. Officer Hauck stated that he arrived at the apartment complex within ten minutes after he first arrived at Wimbrey and Harris's home and that the complex's parking lot was fenced in and had one driveway that served as both an entrance and an exit.

6

Officer Hauck also said that the fence had gaps through which an individual on foot could enter the parking lot.

### 3. Officer James Alexander's Testimony

Officer Alexander testified that within three minutes of receiving the initial burglary in progress 911 dispatch, he arrived at an apartment complex two blocks from Wimbrey and Harris's house. He confirmed that a fence enclosed the complex and that a single road accessed the complex's parking lot. Within four or five minutes of entering the parking lot, he saw a person sprint across the parking lot, and he drove to the area that the person ran toward, exited his car, and found Lemons kneeling down by a parked car. Officer Hauck then arrived, and both officers converged on Lemons as he crouched by the car.

Officer Alexander reiterated Officer Hauck's testimony about frisking Lemons, obtaining consent to search Lemons's pockets, and finding Wimbrey's and Harris's property in Lemons's pockets, but he stated that they arrested Lemons based on an outstanding warrant. The officers searched the area for forty-five minutes but did not find the black hoodie Wimbrey described or a laptop that Wimbrey listed as missing.

Officer Alexander identified Lemons as the person that he saw running across the parking lot and crouching by the car. During cross-examination, Officer Alexander confirmed that Lemons told the officers that he had bought the items from a black man in a white Taurus but that the officers did not look beyond the parking lot for a white Taurus.

### 4. Officer John Romer's Testimony

Officer Romer testified that he arrived at Wimbrey and Harris's house shortly after Officer Hauck and assisted in the search of the house. He also said that Wimbrey and Harris identified the items taken from Lemons's pockets as their own. During cross-examination, Romer admitted that no fingerprints were found at Wimbrey and Harris's home.

### 5. Joyce Harris's Testimony

Joyce Harris testified that on December 25, 2009, she arrived home about ten minutes after receiving Wimbrey's call informing her that their house had been burglarized. She said that she did not give Lemons permission either to enter the house or to take items from it. She then identified several of the items found in Lemons's pockets as her property.

## C. Applicable Law

A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and either commits or attempts to commit theft. Tex. Penal Code Ann. § 30.02(a)(3) (West 2011). Burglary can be proven solely through circumstantial evidence. *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978); *Rollerson v. State*, 196 S.W.3d 818, 820 (Tex. App.— Texarkana 2006) (*Rollerson I*), *aff'd*, 227 S.W.3d 718 (Tex. Crim. App. 2007) (*Rollerson II*).

Further, in cases where there is independent evidence of a burglary, the unexplained personal possession of recently stolen property may constitute

sufficient evidence to support a conviction. *Rollerson II*, 227 S.W.3d at 725; *Chavez v. State*, 843 S.W.2d 586, 587 (Tex. Crim. App. 1992); *see also Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). Mere possession of stolen property does not create a presumption of guilt, rather, it can support an inference of guilt of the offense in which the property was stolen. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *see also Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). To warrant an inference of guilt based solely on the possession of stolen property, it must be established that the possession was personal, recent, and unexplained. *Grant v. State*, 566 S.W.2d 954, 956 (Tex. Crim. App. 1978). Also, the possession must involve a distinct and conscious assertion of a right to the property by the defendant. *Id.* The shorter the period of time between the taking of the property and the defendant's possession of the property, the stronger the inference that the defendant knew the property was stolen. *Naranjo v. State*, 217 S.W.3d 560, 571 (Tex. App.—San Antonio 2006, no pet.). If the defendant offers an explanation for his possession of the stolen property, the record must demonstrate that the account is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.). This inference of guilt is not conclusive on its own, however, and the sufficiency of the

9

evidence must still be examined according to the applicable evidentiary standards of appellate review. *Hardesty*, 656 S.W.2d at 77.

## D. Analysis

Lemons does not dispute that a burglary was committed; instead, he contends that the evidence is insufficient to prove that he committed the burglary. However, the record reflects that each element required to warrant an inference of guilt is present. *See Grant*, 566 S.W.2d at 956. Someone roughly matching Lemons's description was seen climbing from the window of Wimbrey and Harris's home, and within minutes of the 911 dispatch, Officer Alexander saw Lemons run across a parking lot a few blocks from the scene of the burglary and crouch near the front tire of a car. Approximately ten minutes after the burglary occurred, the police found jewelry and other items taken from Wimbrey and Harris's home in Lemons's pockets. *See Rollerson II*, 227 S.W.3d at 725 (holding that the defendant's possession of items recently stolen in a burglary was legally sufficient to convict him of the burglary, even though there were no witnesses to the burglary); *Poncio*, 185 S.W.3d at 905 (same).

Further, by asserting that he had obtained the items from a person driving a white Taurus, Lemons consciously asserted a right to the stolen property. *See Grant*, 566 S.W.2d at 956. But even though Lemons offered an alternative explanation as to why the items were in his possession, the trial court expressly disregarded this explanation as implausible given the short time between Wimbrey's 911 call and Lemons's apprehension, stating

10

I agree with [the defense's] general proposition, [that] it doesn't make sense to ditch the most expensive item [the laptop]. And under normal circumstances, I agree with that.

[I]t makes perfect sense if you're making eye contact and watching the person making a 911 call and you're caught in the act crawling out of the window, to get rid of the most obviously incriminating evidence, be it a hoodie, be it a Walmart sack with a computer or other items, because you know the police are on the way, . . . [M]inutes later [Lemons] is in the parking lot meeting the description, being detained and interviewed by police officers contemporaneous with the at-scene investigation in progress, and he's there with his pockets stuffed full of merchandise out of this house when it makes no common sense that you have time to sit, someone drive up in a white Taurus, wheel and deal, and shove your pockets full of information.

. . . .

And if a person had a white Taurus and wanted to unload stuff and had been seen crawling out of a window, it makes no sense they're going to stop three blocks away to wheel and deal with somebody instead of getting the heck out of Dodge because the cavalry is on the way, . . . . [T]he time from the time he leaves the scene and the time the officers see [Lemons] at the location wouldn't allow time for another person on foot or in a car to sit there to wheel and deal.

. . . .

[I]t's in the record, the time of the original dispatch, the time they're observing [Lemons] and getting follow-up calls. There's no logical, human, scientific explanation for the circumstances other than he's the guy that came out of the window independent of any identification, independent of any eyewitnesses identification.

See Poncio, 185 S.W.3d at 905 (stating that the unexplained possession of property that has been recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary); Adams, 552 S.W.2d at 815 (noting that the record must demonstrate that the defendant's explanation of his

11

possession of recently stolen property is either false or unreasonable before the evidence will support the conviction of burglary); *see also Gear v. State*, 340 S.W.3d 743, 747 (Tex. Crim. App. 2011) (noting that an implausible explanation permits an inference of guilt and may also be considered as affirmative evidence of guilt).

The trial court, as trier of fact, was free to believe or disbelieve Lemons's explanation. S*ee id.,* Considering the evidence in a light most favorable to the prosecution, we conclude that a reasonable minded trier of fact could have convicted Lemons of burglary of a habitation because Lemons's possession of the stolen items was personal and recent, and his explanation for his possession of the items was expressly discredited by the trial court.[3] *See Adams*, 552 S.W.2d at 815. We overrule Lemons's second point.

## VI. Conclusion

Having overruled Lemons's dispositive point, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 25, 2011

---

[3]In his first point, Lemons argues that Wimbrey's identification of him on the night of his arrest was unconstitutionally suggestive. But because the evidence is sufficient to support Lemons's conviction without Wimbrey's identification, we do not reach Lemons's first point. *See* Tex. R. App. P. 47.1.