

# NUMBER 13-07-00633-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ERIC DESHON SORRELLS,**                                                                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                **Appellee.**

### On appeal from the 331st District Court
### of Travis County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Eric Deshon Sorrells, guilty of aggravated robbery, a first-degree felony, and assessed punishment at twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). In four points of error, Sorrells contends that: (1) the trial court erred in refusing to charge the jury on the lesser-included offense of assault; (2) the evidence supporting his conviction is legally insufficient; (3) the evidence supporting

his conviction is factually insufficient; and (4) the trial court erred in refusing to sever Sorrells's case from his co-defendant. Because we hold that the evidence is legally insufficient to prove aggravated robbery, we reform the judgment to reflect conviction of the lesser-included offense of assault by threat and affirm the judgment as reformed. We reverse the judgment as to punishment and remand the case for a new hearing on punishment.

## I. BACKGROUND

In the early morning hours of January 30, 2005, after spending a Saturday night on Austin's Sixth Street, Frances Reynolds waited with a friend on a curb outside of the Spill club ("Spill") for her boyfriend, Nathaniel Rice, who was retrieving her car from a nearby parking lot. Reynolds had consumed a few cherry vodka sours, felt "a little bit" tipsy, and the heels that she wore caused her feet to hurt; she therefore leaned against a silver Mercedes SUV parked on the street. A white male approached Reynolds and told her to "get off the car" because "he knew whose car it was." Reynolds stood up for a moment, then leaned back onto the vehicle. The man walked away and into Spill. Moments later, a black male wearing a "block style" black and gray sweater and a black leather jacket, later identified as Sorrells, emerged from Spill. He approached Reynolds, and told her to "get the f*** off the car" because she was damaging it. Reynolds turned to see if there were any scratches on the hood; when she turned back around, she saw that Sorrells had a gun. With gun in hand, Sorrells hit Reynolds across the side of the head. Reynolds swung back in "self-defense." Sorrells pushed her, and she pushed back. The events that ensued are best described from the vantage point of each witness.

2

## 1.	The Altercation

Reynolds testified that shortly after the scuffle between she and Sorrells ensued, her boyfriend, Rice, arrived on the scene.  As Rice approached, Sorrells turned, pulled back the slide of the gun, and said, "[D]o you have a problem with me, too?"  Rice swung and punched Sorrells, and the two started fighting.  A man wearing a blue, "flannel-type" jacket ran up to Rice and punched him.  Rice fell to the ground.  Reynolds then saw the man in the flannel jacket hold a gun to the back of Rice's head.  Reynolds ran to Spill's entrance and asked for someone to call 911, but no one complied.  When she turned back to check on Rice, the altercation had ended.  Rice had a bloody mouth, a black eye, and a ripped shirt.  He told Reynolds that his jewelry had been stolen.

Rice testified that after retrieving Reynolds's car, he drove to the front of Spill and saw three black males standing at arms length from Reynolds.  As Rice stepped out of the car, he noticed Reynolds "scuffling, fighting, and arguing" with Sorrells.  Rice approached, asking, "[W]hat the h***?"  At that moment, Sorrells "pulled out a gun and cocked it at [Rice]"; this was the first time that Rice saw the gun.  Sorrells pointed the gun at Rice's torso, and Rice "pushed the gun out of the way and swung at Sorrells."  Sorrells struck back, hitting Rice with the gun.  At that moment, a man wearing a flannel jacket punched Rice on the right side of the head, Rice was knocked to the ground, and "jumped by multiple people."  At some point, the beating ceased, and the people hitting him dispersed.  Rice became aware that he was no longer wearing his Figaro necklace with a Versace lion medallion, valued at approximately $1,000, or his three to four inch Versace cross embellished with several diamonds, worth approximately $2,200.  When police arrived moments later, Rice told them that his jewelry had been stolen.  As a result of the

3

altercation, Rice sustained scrapes, bruises, and a busted lip.

Reynolds and Rice's friend, Kevin Fritz, also testified. Fritz had accompanied Rice to the parking lot to retrieve Reynolds's car. As the men drove to the front of Spill, Fritz saw Reynolds arguing with Sorrells. Sorrells hit Reynolds, pulled out a gun, pulled the slide back, and hit Reynolds again. Fritz followed as Rice got out of the car and approached Sorrells. Upon noticing Rice, Sorrells turned and pointed the gun at Rice. Rice took a swing at Sorrells, and then another man came up behind Rice and hit him in the head. A third man joined the fight, and the two men "jumped" Rice. Fritz saw Sorrells point a gun at Rice. Fritz ran up and pushed Sorrells out of the way. The men turned their attention from Rice and began fighting with Fritz. Someone hit Fritz with a gun; after being "dazed" and stumbling for a few seconds, Fritz looked up and saw the three men running into Spill. At some point during the altercation, Fritz noticed Rice's lion medallion necklace on the ground.

Rice's friend, Omar Ponce, testified that he was outside Spill on the night in question and saw Rice arguing with a black male that he later identified as Andre Oliver, the co-defendant in this case. Ponce testified that as he moved towards Rice in an attempt to intervene, Oliver pointed a gun at him. However, on cross-examination, Ponce testified that a man wearing a black leather jacket pointed a gun at him, and that the man in the black leather jacket was the only person that Ponce saw in possession of a gun.

## 2.    The Apprehension

Officer Charles Riley testified that in the early morning hours of January 30, 2005, he was dispatched to an incident outside of Spill. Officer Riley arrived on the scene within

4

twenty or thirty seconds and saw several people in front of Spill; everyone was loud and yelling that "someone had taken something" and "someone had a gun." Officer Riley learned that the gunman, a black male wearing a black leather jacket, had gone inside Spill. Concerned he would have trouble entering Spill, Officer Riley ran down the block, turned the corner and ran into the alley behind Spill. Officer Riley saw three individuals in the otherwise desolate alley. The individuals were about three-quarters of the way down the alley and were walking in the direction opposite Officer Riley. Officer Riley shouted, "Austin police, show me your hands." The individuals continued walking, with their hands in their pockets. Officer Riley quickly walked towards the individuals, continued to identify himself, and asked to see their hands. He also radioed to other officers that three potential suspects were in the alley. One individual, later identified as Rachel Hardeman, turned and looked at Officer Riley, then, while still walking, removed her hand from her jacket pocket and deposited an object into the side of a cardboard recycling receptacle. She then placed her hand back inside her pocket. When additional officers arrived, Officer Riley directed one to secure the receptacle, and the others assisted Officer Riley in detaining the individuals.

After the individuals were secured, Officer Riley searched the receptacle. Inside, he found "a bunch of boxes" and "a pistol." Officer Riley began his investigation by focusing on Hardeman because she had thrown the gun into the receptacle. Officer Riley noticed that the black leather jacket Hardeman was wearing was too big for her. Inside a pocket of the jacket, Officer Riley located a lion medallion necklace, which was later identified as the one Rice reported stolen. The other individuals detained were both black males. One, later identified as Oliver, wore a blue denim jacket. An empty, collapsible

5

shoulder holster was found in an interior pocket of his jacket. The other man, later identified as Sorrells, wore a black and tan sweater, but was not wearing a jacket. Rice's $2,200 Versace cross was never found.

The officers placed each suspect in a separate patrol car and drove them to the front of Spill. The officers separately asked Reyonlds, Rice, and Fritz if they could identify any of the individuals in the patrol cars. No one identified Hardeman. Officer Brian Green testified that he separately took Reynolds, Rice, and Fritz to the car where Sorrells was seated. Each identified Sorrells as the man who had been wearing a black leather jacket.

On June 14, 2006, Sorrells was indicted by a grand jury for aggravated robbery. Sorrells pleaded not guilty and, on August 14, 2007, was tried with Oliver by jury. After the State's case in chief, Oliver called one witness, and Sorrells called none. The State tendered the charge that was ultimately submitted to the jury. The tendered charge abandoned the first paragraph of the indictment.[1] Sorrells requested the lesser-included offense of assault, but his request was denied. The jury found Sorrells guilty of aggravated robbery with a deadly weapon, the only offense the jury was instructed on, and assessed punishment at twenty years' imprisonment. This appeal ensued.

## II. LEGAL SUFFICIENCY

In his second point of error, Sorrells challenges the legal sufficiency of the evidence supporting his conviction.

---

[1] The first paragraph provided that:

Sorrells . . . did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, **intentionally, knowingly, or recklessly cause bodily injury** to Nathaniel Rice by hitting Nathaniel Rice with a hand, and the said Eric Deshon Sorrells did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]

(Emphasis added).

6

**A.      Standard of Review and Applicable Law**

In conducting a legal sufficiency review, the reviewing court must ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.  *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).   Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.  We must resolve any inconsistencies in the evidence in favor of the judgment.  *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).  Under a hypothetically correct jury charge, a person commits aggravated robbery "if he commits robbery . . . and he . . . uses or exhibits a deadly weapon . . . ."  TEX. PENAL CODE ANN. § 29.03.  A firearm is a deadly weapon.  *Id.* § 1.07(a)(17) (Vernon Supp. 2009).  Robbery requires a nexus between the assault and the theft.  *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002).  A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  TEX.

7

PENAL CODE ANN. § 29.02 (Vernon 2003). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1) (Vernon 2003).

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(a), (b)(1) (Vernon Supp. 2009). The penal code defines "[a]ppropriate" as "bring[ing] about a transfer or purported transfer or title to or other nonpossessory interest in property, whether to the actor or another" or "acquir[ing] or otherwise exercis[ing] control over property other than real property." *Id.* § 31.01(4) (Vernon Supp. 2009). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003).

## B.    Legally Insufficient Evidence of Theft

Although juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial," a jury is "not permitted to draw conclusions based on speculation." *Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007). In order to reach the conclusion that Sorrells committed aggravated robbery, the jury was first required to find that he committed theft.[2] *See* TEX. PENAL CODE

---

[2] The dissent contends that we have erroneously reviewed the evidence by focusing on a completed theft. Although we agree that aggravated robbery may be proven by attempted theft, based on the evidence presented, the dissent's conclusion that Sorrells "attempted to acquire" Rice's necklace is incongruous with the inferences the dissent concludes that the jury made. The dissent argues that "a rational jury could reasonably conclude that Sorrells attempted to appropriate Rice's necklace by picking it up and putting it in his jacket pocket." However, if it is reasonable for the jury to infer that Sorrells, with the intent to deprive Rice of his property, picked up Rice's necklace and put it in his jacket pocket, the jury implicitly found Sorrells guilty of a complete, rather than an attempted, theft. *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009).

A person attempts to commit theft if he, with specific intent to commit theft, "does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* §

ANN. § 29.02.

The jury heard testimony that Rice's necklace was found in the pocket of the jacket worn by Hardeman. To support a finding of theft, the jury had to draw multiple inferences; the jury had to infer that Sorrells gave his jacket to Hardeman after inferring that Sorrells appropriated Rice's necklace and placed it in the pocket of the black leather jacket. The first inference the jury had to make was that the black leather jacket worn by Hardeman at the time of her apprehension belonged to Sorrells. The jury heard testimony that Sorrells was wearing a black leather jacket at the time of the altercation and that after the altercation he ran inside Spill. Shortly after the altercation, Sorrells, no longer wearing a jacket, was found walking with Hardeman and Oliver in the alley behind Spill. When police spotted the trio in the alley, officers testified that Sorrells was no longer wearing a black leather jacket, and Hardeman was wearing a black leather jacket that appeared to be too big for her. Based on this circumstantial evidence, the jury could have reasonably inferred that the jacket worn by Hardeman belonged to Sorrells. *See Hooper*, 214 S.W.3d at 16.

The next inference the jury had to make was that Sorrells committed theft. There

15.01(a) (Vernon 2003). Theft involves the act of unlawful appropriation. *See id.* § 31.03(a), (b)(1). A person unlawfully appropriates another's property when, without the owner's effective consent, he "acquire[s] or otherwise exercises control over property other than real property." *Id.* § 31.01(4) (Vernon Supp. 2009). A person who, with the intent to deprive, and without the owner's effective consent, picks up the property of another and places it in his pocket, commits theft. *See id.* § 31.03(a), (b)(1).

In an attempt to lessen the amount of evidence required to support Sorrells's aggravated robbery conviction, the dissent endeavors to lessen the evidence required to prove aggravated robbery by stating that the jury's inferences do not have to be great enough to prove a completed theft, and that they merely have to prove that a lesser offense, an attempt, occurred. While we agree that an aggravated robbery conviction may be based on attempted theft, we do not agree, as the dissent implicitly advocates, that a jury can infer that although Sorrells intended to deprive Rice of his property when he appropriated the necklace, no completed theft occurred. Indeed, the act of unlawful appropriation, when coupled with the intent to deprive the owner of his property, is the very definition of theft. *See id.* Therefore, because Sorrells's conviction of aggravated robbery will only stand if the jury infers that Sorrells appropriated Rice's necklace, we focus our analysis on whether the jury could reasonably infer that Sorrells committed theft.

is no direct evidence that theft occurred at the time of the assault.  Similarly, there is scant circumstantial evidence that Sorrells committed assault "in the course of committing theft." The only evidence regarding the necklace that was presented to the jury was that:  (1) Rice was wearing his necklace when he confronted Sorrells; (2) after Oliver and another man joined the altercation against Rice, Fritz saw Rice's necklace on the ground; (3) none of the witnesses to the altercation identified Hardeman as being present at the time of the altercation; (4) Sorrells, Oliver, and Hardeman were arrested behind Spill; and (5) Hardeman was wearing a black leather jacket that contained Rice's necklace.

*1. Aggravated Robbery as a Party*

Texas law provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.  *See* TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003).  For a defendant to be guilty under the law of parties, the State must prove the guilt of another as the primary actor.  *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993); *Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.–Austin 2001, pet. ref'd).  Because the trial court provided a parties charge to the jury, the State could establish the offense of theft by showing that:  (1) Sorrells himself unlawfully appropriated the lion medallion necklace; or (2) Sorrells solicited, encouraged, directed, aided, or attempted to aid the primary actor with the intention of promoting or assisting the primary actor with the theft.  *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02 (Vernon 2003).

The only evidence the State presented that Oliver or the other unidentified man involved in the assault committed theft was their participation in the assault.  The State's

10

evidence does not prove beyond a reasonable doubt that either Oliver or the unidentified man was the primary actor. Additionally, the only evidence the State presented to prove that Hardeman was the primary actor was that Rice's necklace was found in the pocket of the jacket that she was wearing. The possession of stolen property may justify an inference of guilt if that possession is personal, recent, and unexplained and involves a conscious assertion of control over the property. *Grant v. State*, 566 S.W.2d 954, 956 (Tex. Crim. App. 1978). Assuming, without deciding, that the State met its burden of proving, beyond a reasonable doubt, that Hardeman was the primary actor, there is no evidence that Sorrells solicited, encouraged, directed, aided, or attempted to aid Hardeman in committing the theft. Therefore, the law of parties provides no support for the State's argument that the evidence was legally sufficient.

*2. Aggravated Robbery as a Principal*

Mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction; however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979). We, therefore, must determine whether Hardeman's possession of the necklace, coupled with Sorrells's presence at the scene of the assault, provided the jury with sufficient evidence to infer that Sorrells, acting as the principal, acquired Rice's necklace. Where a defendant is found in unexplained possession of recently stolen property, the fact finder is permitted to draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). "To warrant such a presumption the possession must be personal, recent, and unexplained, and must involve

11

a distinct and conscious assertion of right to the property." *Todd v. State*, 601 S.W.2d 718, 720 (Tex. Crim. App. 1980). At the time of Sorrells's arrest, although the necklace was found in a jacket that the jury could have inferred belonged to Sorrells, neither the jacket, nor the necklace were found on his person; instead, Hardeman was wearing the jacket. This evidence is insufficient to show that Sorrells had personal possession of the necklace at any point in time or that he asserted a distinct and personal right to it. *Cf. Rodriguez v. State*, 549 S.W.2d 747, 749 (Tex. Crim. App. 1977) (finding evidence insufficient to support a theft conviction where a stolen file box was found in a closet of a bedroom which the defendant shared with another). Therefore, evidence that the necklace was found in the pocket of Sorrells's jacket does not create the permissible inference that he committed theft.

Based on the foregoing, there were no facts in evidence from which a rational jury could infer that Sorrells committed theft. *See Laster*, 275 S.W.3d at 518. Accordingly, the evidence is legally insufficient to support a conviction of aggravated robbery.

**C.     Evidence is Insufficient to Prove a Nexus Between the Assault and the Theft**

Even assuming that the evidence is sufficient to prove that Sorrells committed theft, as previously noted, robbery requires a nexus between the assault and the theft. *See Cooper*, 67 S.W.3d at 223 (Tex. Crim. App. 2002) ("the nexus requirement for capital murder involving murder in the course of a robbery is the same as the nexus requirement in a robbery between the assault and the theft"). Proof that theft was committed as an afterthought, and unrelated to the assault, does not support a conviction for robbery. *See e.g., Moody v. State*, 827 S.W.2d 875, 892  (Tex. Crim. App. 1992) ("proof of a robbery

12

committed as an afterthought and unrelated to a murder would not provide sufficient evidence of capital murder"). In the present case, no evidence was presented that an intent to commit theft arose before the assault. However, Hardeman's possession of the necklace provides some evidence that the intent to commit theft could have arisen during or immediately after the assault. The general rule is that "a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Cooper*, 67 S.W.3d at 224.

Although the court of criminal appeals has recognized that there may be circumstances where "evidence of a motive other than theft can negate the natural inference that arises when a theft immediately follows an assault," the court has held that "the inference will not be negated by evidence of an alternative motive that the jury could rationally disregard." *Id.* In the present case, the evidence revealed that Sorrells's motive for the assault was to get Reynolds away from the silver Mercedes SUV and to keep Rice from interfering. In light of the fact that (1) there is no evidence that Sorrells approached Reynolds in an attempt to appropriate her property; (2) Sorrells did not approach Rice in an attempt to appropriate his necklace; (3) there is no evidence that Sorrells was a party to theft; and (4) no words, actions, or conduct during the commission of the assault indicate that Rice's assault was committed to facilitate the appropriation of his necklace, a juror could not rationally disregard that Sorrells's only motive was to move Reynolds from the vehicle and keep Rice from interfering. While we do not condone Sorrells's heinous actions, based on the evidence, we cannot conclude that Sorrells's assault of Rice was intended to facilitate the theft of Rice's necklace. Therefore, the evidence is legally

13

insufficient to support Sorrells's conviction of aggravated robbery because no rational juror could have found a nexus between Rice's assault and the appropriation of his necklace. Sorrells's second issue is sustained.

## III. REFORMATION OF JUDGMENT

A court of appeals may modify the trial court's judgment to reflect guilt of a lesser-included offense and affirm it as modified. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). However, the court may do this only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser-included offense and (2) either the jury was instructed on the lesser-included offense or one of the parties asked for but was denied such an instruction.[3] *Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality opinion); *Ross v. State*, 9 S.W.3d 878, 882 (Tex. App.–Austin 2000, pet. ref'd).

In the present case, Sorrells requested an instruction on the lesser-included offense of assault. The statutory definition of simple assault sets out three distinct criminal offenses under section 22.01(a)(1)-(3). TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2009). The penal code provides:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

---

[3] Although the evidence seems to support a conviction for aggravated assault, neither party requested a lesser-included instruction for that offense. Therefore, our analysis is limited to simple assault. *See Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality opinion).

14

(3) intentionally or knowingly causes physical contact with another person when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Id.* These offenses are often referred to as: "bodily injury" assault, assault by threat, and "offensive contact" assault. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). Because neither bodily injury nor offensive contact are required to prove aggravated robbery as charged, neither section 22.01(a)(1) or (a)(3) are lesser-included offenses.[4] *See Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *see also* TEX. PENAL CODE ANN. § 22.01(a). However, because the elements required to prove assault by threat are "established by proof of the same or less than all the facts required to establish the commission of the offense charged," assault by threat, a Class C misdemeanor, is a lesser-included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *see* TEX. PENAL CODE ANN. § 22.01(a)(2); (c).

The State offered ample evidence that Sorrells intentionally or knowingly threatened Rice with imminent bodily injury. *See* TEX. PENAL CODE ANN. § 22.01(a)(2). "The gist of the offense of assault, as set out in [s]ection 22.01(a)(2), is that one acts with intent to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to inflict such harm)." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). Rice testified that Sorrells pointed a gun at him and hit him several times. The jury heard

---

[4] After dropping the first paragraph of the indictment, the indictment read:

Sorrells did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, **intentionally or knowingly threaten or place Nathaniel Rice in fear of imminent bodily injury or death**, and the said Eric Deshon Sorrells did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]

(Emphasis added).

15

similar testimony from Fritz and Reynolds. Additionally, Rice testified that he was "afraid" when he saw Sorrells point the gun at him. Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Sorrells intentionally or knowingly threatened Rice with imminent bodily injury. *See McGowan v. State*, 664 S.W.2d 355, 357-58 (Tex. Crim. App. 1984). We therefore hold that the evidence is legally sufficient to support a conviction of assault by threat.

The evidence is also factually sufficient to support a conviction of assault by threat. Reynolds testified that Sorrells pointed a gun at Rice. She testified that during the encounter, Sorrells was wearing a "block-style" black and gray sweater with a leather jacket. Additionally, Rice and Fritz also testified that a black male wearing a black leather jacket pointed a gun at Rice. There were some inconsistencies in the manner and at which point of the altercation Sorrells pointed a gun at Rice; however, Reynolds, Rice, and Fritz each identified Sorrells as the man who pointed a gun at Rice. The jury heard conflicting testimony from Ponce, who testified on direct examination that, Oliver, Sorrells's co-defendant, was the only man who had a gun. However, on cross-examination, Ponce testified that a man wearing a black leather jacket was the only man who had a gun. Reviewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that a conviction would be clearly wrong and manifestly unjust or that it would be against the great weight and preponderance of the evidence. *See e.g., Watson*, 204 S.W.3d at 414-15. We conclude that the evidence is factually sufficient to support a conviction of assault by threat. Accordingly, we will reform the judgment to reflect a conviction of the lesser-included offense of assault by threat. *See English v. State*, 171 S.W.3d 625, 629-30

16

(Tex. App.–Houston [14th Dist] 2005, no pet.).  Because the punishment for Sorrells's original conviction differs from the conviction as reformed, we reverse that part of the judgment assessing punishment.  *See id.* at 631; *see also Garrett v. State*, 161 S.W.3d 664, 672 (Tex. App.–Fort Worth 2005, pet. ref'd).

## IV. CONCLUSION

We reform the judgment of guilt to reflect conviction of the lesser-included offense of assault by threat and affirm the judgment as reformed.  We reverse the judgment as to punishment and remand the case to the trial court for a new hearing on punishment.[5]

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
by Justice Vela.

Do Not Publish. TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 12th day of November, 2009.

---

[5] In light of our disposition, we need not discuss Sorrells's remaining issues.  These issues, which concern the denial of Sorrells's request for a jury charge on the lesser-included offense of assault, factual sufficiency, and the denial of Sorrells's motion to sever would not afford Sorrells any greater relief than already afforded herein.  *See* TEX. R. APP. P. 47.1.

17