

# NUMBERS 13-10-00349-CR AND 13-11-00242-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN PAUL RICHMOND,                                                     **Appellant,**

**v.**

THE STATE OF TEXAS,                                                     **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Perkes
### Memorandum Opinion by Justice Perkes

In cause 13-10-00349-CR, appellant, John Paul Richmond, appeals the trial court's judgment revoking his deferred-adjudication community supervision and convicting him of the original offense, unlawful possession of a prohibited weapon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.05(a)(3) (West 2011) (making it an offense to intentionally or knowingly possess, manufacture, transport, repair, or sell a short-barrel firearm). The trial court sentenced appellant to five years of confinement in

the Texas Department of Criminal Justice, Institutional Division, and imposed a probated $500 fine. By a single issue in cause 13-10-00349-CR, appellant argues the evidence at the revocation hearing was insufficient to prove he violated the terms of his community supervision by committing theft or burglary of a building on or about January 15, 2010.[1] We affirm.

In cause 13-11-00242-CR, appellant appeals his conviction for theft, a state-jail felony. *See id.* § 31.03(a) & (e)(4)(A). Following a jury trial, appellant was found guilty and sentenced to eighteen months of confinement in the Texas Department of Criminal Justice, Institutional Division and ordered to pay a $6,000 fine, $1,944 in court costs, and $11,700 in restitution. By a single issue in cause 13-11-00242-CR, appellant argues the evidence is insufficient to support his theft conviction. Appellant was charged by indictment with the theft of an all-terrain vehicle, a riding lawnmower, a skeet thrower, and a welding machine from Brian Bruns, on or about January 15, 2010. The property was alleged to have a value of $1,500 or more, but less than $20,000. We affirm.

Although no motion to consolidate these appeals has been filed, in the interest of judicial economy we issue a single opinion herein disposing of both appeals. We do so because our review of the records shows that the same facts and similar legal issues are involved in both appeals.

---

[1] The State's first amended motion to revoke community supervision alleged that appellant violated the conditions of his community supervision in the following ways: (1) committed the offense of driving while his license was suspended; (2) committed the offense of theft in Victoria County; (3) committed the offense of burglary of a building in Victoria County; (4) tested positive for methamphetamines; and (5) failed to successfully complete the Aggression Control Program. The trial court held that the evidence was insufficient to show a violation of the above referenced first and fifth allegations. The trial court did not rule on the fourth allegation.

## I. FACTUAL BACKGROUND

### A. Testimony Presented at the Revocation Hearing and the Theft Trial

Bruns testified that on January 16, 2010, he discovered that someone had broken into a metal building on his country property in Victoria County, Texas, and stolen everything inside. The stolen items included a utility trailer, three four-wheelers, a blue welding machine, a green "Do-All" skeet thrower, and a black Poulan riding lawnmower with a yellow mowing deck. According to Bruns's testimony, tire tracks and a hole cut in the fence surrounding the property showed that the person who stole the items drove them off of the property using a trailer, exiting through the hole in the fence.

Adelmiro Cantu testified that he ran into appellant at about 7:00 p.m. on January 15, 2010, one day prior to Bruns's discovery of the burglary. Appellant was on the property of Adelmiro's nephew, Rolando Cantu, in Goliad County, about nine miles from Bruns's property. Adelmiro was going to the property to place some corn for a hog hunt he planned to have the next day, when he saw appellant. Adelmiro called Rolando, who was out of town in Laredo, Texas, and told him somebody was on his property. Rolando told Adelmiro it was appellant.[2] Adelmiro described appellant as a family friend.[3]

After confirming it was appellant on the property, Adelmiro entered Rolando's property and saw appellant driving a Chevy pick-up truck that was being used to pull a black trailer loaded with a large Polaris four-wheeler, a smaller four-wheeler, a black

---

[2] At the revocation hearing and at trial, Adelmiro testified that Rolando told him that appellant was on the property to pick up some "stuff" appellant bought through eBay. In both proceedings, appellant's counsel objected after Adelmiro testified and the objection was sustained. At trial, the trial court instructed the jury to disregard the portion of Adelmiro's testimony that included the eBay reference.

[3] Adelmiro described the complainant, Brian Bruns, as a friend or acquaintance who worked with Adelmiro's son, but he did not know Bruns as well as he knew appellant.

riding lawn mower with a yellow deck, and a blue welding machine. Adelmiro stopped and talked with appellant for a minute or two.[4]

Several days later, Adelmiro learned that the Bruns property had been broken into and that several four-wheelers were stolen. Adelmiro's son worked with Bruns and his son gave Adelmiro a list of the missing property. Adelmiro recognized from the list the two four-wheelers, the riding lawn mower, and the welding machine he had seen on appellant's trailer. The list was admitted into evidence.

On January 20, 2010, Adelmiro returned to Rolando's property in Goliad County to look for other items on the list of stolen property. While Adelmiro was there, he noticed that a gray tarp that he used for a barbeque a few days earlier was missing. The tarp was found about 100 yards from where it had been when Adelmiro last saw it, near some round bales of hay, covering a green skeet throwing machine. Adelmiro recognized the skeet-throwing machine as an item on the list of stolen property and photographed the machine. Adelmiro searched for more items, and found tracks that led from the skeet-throwing machine to a box. A four-wheeler was found inside the box, which Adelmiro also photographed. The four-wheeler was identified as a 90cc Kazuma model, the same as the other four-wheeler on the list of stolen property.

Adelmiro called his nephew, Rolando, who owned the property where Adelmiro found the stolen items. Rolando had been out of town, in Laredo, during the time that the stolen items were placed on his property. Adelmiro told Rolando about finding the items and believing that appellant had stolen them. Adelmiro told Rolando to call appellant

---

[4] At the revocation hearing, Adelmiro testified that during his brief conversation with appellant on January 15, 2010, appellant told Adelmiro he was headed to the [Rio Grande] "[V]alley area" of Texas. Adelmiro did not mention this fact in his trial testimony.

4

and get him to return the stolen property. Adelmiro waited two days to give appellant a chance to return the property. When nothing was returned, Adelmiro shared his information with Bruns.[5]

Bruns identified the photographs Adelmiro took of the skeet-throwing machine and the Kazuma four-wheeler as depicting his property. Bruns was able to identify the four-wheeler because the photographs showed evidence of specific repairs made to the vehicle's skid plate and left foot peg. Bruns also identified the skeet thrower in the photograph as identical to the skeet thrower that was stolen from his shed.

Investigator Charles Williamson, of the Victoria County Sheriff's Office, testified that he contacted appellant by telephone on January 28, 2010. Investigator Williamson asked appellant to come in to talk to him about the case. During the conversation, Investigator Williamson also asked appellant if he was in possession of the trailer full of stuff, and appellant denied being in possession of the trailer. Appellant told Investigator Williamson he would come to the Sheriff's Office to discuss the case further, but he never did.[6]

---

[5] At the revocation hearing, Adelmiro testified that when Rolando spoke with appellant about the items, appellant told Rolando he had "already gotten rid of the stuff." At trial, Adelmiro did not testify regarding this point.

[6] At the revocation hearing, Investigator Williamson testified that during his phone conversation with appellant, he told appellant about the case and that he was a suspect. At the revocation hearing, Investigator Williamson also testified that after appellant denied being in possession of the trailer, appellant then asked, 'What trailer?'

At trial, an audio recording of the telephone conversation was admitted into evidence as State's Exhibit 24. The conversation is less than a minute long. In it, Investigator Williamson told appellant, "We need to talk about some four-wheelers you were seen with on the 15th." Appellant responded, "Yeah I know. Rolando called me and told me some stuff about it." Appellant then told Investigator Williamson he would come to the Sheriff's Office and talk to him the next morning. Investigator Williamson then asked whether appellant still had possession of the items seen on the trailer to which appellant responded, "No, sir. [pause] The stuff on the flatbed trailer?" Investigator Williamson then instructed appellant to come in to talk the next day and concluded the conversation.

Appellant testified at the revocation hearing, and excerpts of his testimony were admitted at his theft trial. Appellant testified that on the night of January 15, 2010, he was on Rolando's property alone to do an inventory of hay bales and that he saw Adelmiro. Appellant admitted that he was hauling a trailer with two all-terrain vehicles that night, but claimed he was hauling them from his girlfriend Jennifer Alkek's house to a ranch in "the Valley." Appellant denied hauling lawn mowers that night, first stating that he was hauling two riding lawn mowers, but later testifying that he was not hauling any lawn mowers. Appellant denied hauling a welding machine that night. He testified that he owned several all-terrain vehicles, a welding machine, a compressor, and a trailer, and that these items could all be found outside at Alkek's property. In his testimony, appellant also denied seeing the skeet thrower or the small all-terrain vehicles that were found on Rolando's property.

## B. Additional Testimony Presented Only at the Theft Trial

At trial, Investigator Williamson described how he searched the property where Alkek lived for the stolen items because he knew Alkek was appellant's girlfriend. Alkek lived on her father's property. While several old four-wheelers were observed, none of the stolen items were found on the premises.

Alkek testified that for about four months, including the time of the theft, appellant sometimes stayed with her. The property was located less than a mile from Bruns's property. Alkek testified that appellant did not own a welding machine[7] or a riding lawnmower. She said that the riding lawnmower at her home belonged to her father and

---

[7] Concerning the welding machine, Alkek testified on direct-examination that she did not think appellant owned a welding machine.

was not black with yellow trim. She added that appellant never took her father's riding lawnmower off the property and did not haul it on a trailer.

Alkek further testified that she kept multiple four-wheelers on her father's property. Alkek initially testified that she had never seen appellant load one of the four-wheelers and "take it down to the [Rio Grande] [V]alley." However, she added that she had three children and was busy with work. She said that on at least one occasion, appellant loaded her big, dark blue Polaris-brand four-wheeler and took it somewhere. She did not testify as to when this happened. On cross-examination, Alkek testified that two of the four-wheelers on her father's property belonged to her and two of them belonged to appellant. She said that appellant had "a really big" gooseneck trailer that he kept on her father's property which he used to haul hay. She testified that she thought appellant would sometimes borrow a different trailer from "Roli" to use for hay baling.

## II. STANDARDS OF REVIEW

### A. Judgment Revoking Community Supervision in Cause 13-10-00349-CR

The decision to proceed to adjudication of guilt and to revoke deferred-adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West 2011). We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State,* 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State,* 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a community supervision revocation hearing, an abuse of discretion occurs when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Wilkins v. State,* 279 S.W.3d 701, 703–04 (Tex. App.—Amarillo 2007,

7

no pet.); *Brumbalow v. State,* 933 S.W.2d 298, 300 (Tex. App.—Waco 1996, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Cherry v. State,* 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). A preponderance of the evidence means that the greater weight of the credible evidence would create a reasonable belief that the defendant violated a condition of his community supervision. *Rickels,* 202 S.W.3d at 763–64.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona,* 665 S.W.2d at 493; *Garrett v. State,* 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona,* 665 S.W.2d at 493–94. Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support revocation. *Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State,* 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).

## B. Theft Conviction in Cause 13-11-00242-CR

Evidence is insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)). In evaluating a legal-sufficiency challenge, we consider all of the evidence and view it in the light most favorable to the verdict. *Jackson*, 443

U.S. at 319. The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (citing *Jackson*, 443 U.S. at 319).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which defendant was tried. *Id.*

### III. ANALYSIS

Appellant argues that the evidence is insufficient to prove he violated the terms of his community supervision by committing theft or burglary of a building. Appellant further

argues that the evidence is insufficient to support his conviction for theft. We disagree with appellant that the evidence adduced at the revocation hearing and at trial is insufficient to support the trial court's respective judgments.

In the revocation case, the State alleged that appellant violated condition 1 of his community supervision by committing the offense of burglary of a building in Victoria County, Texas, on or about January 15, 2010.[8] In the trial court case, appellant was charged with theft by indictment for unlawfully appropriating, by acquiring or otherwise exercising control over, an all-terrain vehicle, a riding lawnmower, a skeet thrower, and a welding machine from Brian Bruns, on or about January 15, 2010 in Victoria County, Texas. A person commits the offense of burglary of a building if, without the effective consent of the owner, the person enters a building not then open to the public, with intent to commit a theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of property. *Id.* § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

A defendant's unexplained possession of recently stolen property gives rise to an inference of theft. *Hardesty v. State*, 656 S.W.2d 73, 77 (Tex. Crim. App. 1983). This

---

[8] In its judgment revoking appellant's community supervision, the trial court found appellant violated "#1" "as set out in the State's AMENDED Motion to Revoke Community Supervision." In its first amended motion to revoke community supervision, the State alleged multiple separate violations of condition "#1" of appellant's community supervision. These respective alleged violations included the offense of committing theft in Goliad County, Texas on or about January 15, 2010, and committing the offense of burglary of a building in Victoria County, Texas on or about January 15, 2010. Proof of a single violation by a preponderance of the evidence is sufficient to support revocation and because we find the evidence is sufficient to show the burglary offense in Victoria County, we need not consider the sufficiency of the evidence to show a theft offense in Goliad County. *See* TEX. R. APP. P. 47.1; *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980). Appellant does not argue or complain on appeal that the State was required to prove both of these alleged violations of his community supervision.

10

rule also applies to burglary cases because "a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *see also Tabor v. State*, 88S.W.3d 783, 786 (Tex. App.—Tyler 2002, no pet.); *Sweny v. State*, 925 S.W.2d 268, 270–71 (Tex. App.—Corpus Christi 1996, no pet.).

Mere possession of stolen property does not give rise to a presumption of guilt, but rather it will support an inference of guilt of the offense in which the property was stolen. *Tabor*, 88 S.W.3d at 786 (citing.*Hardesty*, 656 S.W.2d at 76). To warrant an inference of guilt based solely on the possession of stolen property, it must be established that the possession was personal, recent, and unexplained. *Id.* (citing *Grant v. State,* 566 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1978)). Also, the possession must involve a distinct and conscious assertion of a right to the property by the defendant. *Id.* If the defendant offers an explanation for his possession of the stolen property, the record must demonstrate the account is false or unreasonable. *Id.* (citing *Adams v. State,* 552 S.W.2d 812, 815 (Tex. Crim. App. 1977)). Whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact. *Id.* (citing *Dixon v. State,* 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.)). The inference of guilt based on possession of recently stolen goods is not conclusive and the evidence must still be sufficient to support the conviction. *See Dixon*, 43 S.W.3d at 552.

The evidence is sufficient to prove by a preponderance of the evidence that appellant committed burglary of a building in Victoria County, Texas on or about January 15, 2010. The evidence is also sufficient to prove beyond a reasonable doubt that

appellant was guilty of theft as charged. The evidence gives rise to an inference of guilt and numerous facts corroborate that conclusion. In the same time frame that the burglary of Bruns's property occurred, appellant, who lived less than a mile away from Bruns's property, was seen hauling two four-wheelers, a riding lawn mower, and a welding machine that matched the items stolen from Bruns. The black riding lawn mower with yellow trim was unique, particularly when considered in combination with the blue welding machine and missing four-wheelers. Appellant admitted he was on Rolando's property hauling two four-wheelers at the time Adelmiro claimed. Appellant testified he was hauling these items to "the Valley."

Appellant's testimony, however, was inconsistent because he initially testified he was hauling two riding lawn mowers at the time, but later testified he did not haul any riding lawn mowers that night. A fact-finder may infer a consciousness of guilt from a defendant's changing story about the crime and surrounding circumstances. *See Couchman v. State*, 3 S.W.3d 155, 163–64 (Tex. App.—Fort Worth 1993, pet. ref'd). "A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt." *Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref'd.) (quoting *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.)). "It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as a circumstance tending to prove that he committed the act with which he is charged." *Torres*, 794 S.W.2d at 598 (internal quotations omitted). Here, the fact-finder could infer from appellant's changing story that he was trying to cover up that Adelmiro had seen him hauling items that he had stolen from Bruns's property. The fact-finder

12

could also conclude appellant's failure to keep his appointment with Investigator Williamson was a circumstance that tended to prove his guilt.

At the theft trial, Investigator Williamson and Alkek's testimony contradicted appellant's testimony, and the jury was free to believe their testimony over appellant's testimony. *See Fuentes*, 991 S.W.2d at 271; *Cardona*, 665 S.W.2d at 493. Although appellant testified that his welding machine could be found outside at Alkek's property, Investigator Williamson searched that property and did not find any of the stolen items. Alkek testified appellant did not own a welding machine or a riding lawn mower and that the riding lawn mower at her residence was not black and yellow. Alkek also testified that appellant had never loaded one of the four-wheelers at her residence to take it to the Valley, but added that he did once load a big, dark blue Polaris four-wheeler and took it somewhere.

Appellant asserted a distinct and conscious right to the stolen property on the trailer by loading it on the trailer, taking it to the Rio Grande Valley, and disposing of it. When Investigator Williamson confronted appellant about his possession of the property, appellant did not offer any explanation for his possession that was inconsistent with guilt. At the revocation hearing, Adelmiro testified that when Rolando asked appellant whether he still had the items he was seen hauling, appellant admitted to disposing of them. Appellant did not offer Rolando a reasonable explanation of his possession of the items.

The fact-finder could also reasonably infer, from appellant's possession of the stolen items on the trailer, that appellant also stole the missing skeet thrower and 90cc Kazuma four-wheeler Adelmiro found concealed on Rolando's property. *See Hite v. State,* 650 S.W.2d 778, 781 (Tex. Crim. App. 1983); *Mason v. State*, 321 S.W.2d 591, 593

13

(Tex. Crim. App. 1959). Bruns testified to a single burglary of his building in which many items, including a trailer, were hauled away from his property through a hole the perpetrator cut in the fence. Adelmiro discovered the skeet thrower and 90cc Kazuma four-wheeler shortly after seeing appellant on Rolando's property, in the same time frame that they were stolen. They matched the description of the items taken from Bruns's property. Under the respective standards of review, the evidence was sufficient to support the trial court's judgment in each case. We overrule appellant's sole issue in each appeal.

## IV. CONCLUSION

We affirm the trial court's judgment in each case.

---

Gregory T. Perkes
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b)

Delivered and filed the
9th day of August, 2012.

14